### ROBERT SIMMS *v.* PENNY Q. SEAMAN ET AL.
### (AC 31809)

Bishop, Bear and Stoughton, Js.*

---

\* Although Judge Stoughton died before the publication of this case, he previously had agreed with the written majority decision.

Argued October 29, 2010—officially released June 28, 2011

*John R. Williams*, for the appellant (plaintiff).

*Patrick M. Noonan*, with whom, on the brief, was *Matthew H. Geelan*, for the appellee (named defendant).

*Raymond J. Plouffe, Jr.,* for the appellee (defendant Susan A. Moch).

*Nadine M. Pare,* for the appellees (defendant Kenneth J. Bartschi et al.).

*Opinion*

BEAR, J. The plaintiff, Robert Simms, appeals from the judgment of the trial court rendered in favor of the defendants Penny Q. Seaman, Susan A. Moch, Kenneth J. Bartschi, Brendon P. Levesque and Karen L. Dowd.[1] On appeal, the plaintiff claims that the court improperly struck the claims for fraud and intentional infliction of emotional distress filed against the defendants on the ground of absolute immunity and, thereafter, improperly rendered judgment in favor of the defendants. We affirm the judgment of the trial court.

The following facts as alleged in the plaintiff's amended complaint are relevant to our resolution of the appeal.[2] The plaintiff and Donna Simms were married from 1961 until 1979, when they divorced and the plaintiff was ordered to pay periodic alimony. The plaintiff filed a motion to modify the alimony payments on November 29, 2004, which was granted by the court. Donna Simms appealed from that judgment, and, on August 14, 2007, our Supreme Court reversed the judgment and remanded the case to the trial court for further proceedings. *Simms* v. *Simms,* 283 Conn. 494, 510, 927 A.2d 894 (2007).

From late 2005 until approximately August 14, 2007, Bartschi, Levesque and Dowd represented Donna Simms in her appeal to the Supreme Court.

[1] The defendants are former attorneys for the defendant Donna Simms, who is not a party to this appeal. For purposes of the appeal, we refer to Seaman, Moch, Bartschi, Levesque and Dowd as the defendants.

[2] "Because the [plaintiff's] appeal follows from a motion to strike, the facts alleged in the . . . complaint must be taken to be true, and construed in the manner most favorable to the pleader." (Internal quotation marks omitted.) *Picco* v. *Voluntown,* 295 Conn. 141, 144 n.5, 989 A.2d 593 (2010).

Moch represented Donna Simms during the years 2006 and 2007. During that time, Moch filed at least one motion for pendente lite counsel fees in the Superior Court on behalf of Donna Simms. Seaman represented Donna Simms in the Superior Court from approximately March, 2007, until October 17, 2008. All defendants failed to disclose the true financial circumstances of Donna Simms.

Throughout the periods that the defendants represented Donna Simms, they affirmatively represented to the Superior Court and to the Supreme Court that Donna Simms "was in highly disadvantaged economic circumstances" and that the plaintiff should "be compelled to pay substantial sums of money to Donna Simms for her necessary support and maintenance."[3] The defendants made such representations despite knowing that Donna Simms had become the beneficiary of a substantial bequest from her uncle, Albert Whittington Hogeland.[4] In June, 2006, Donna Simms received approximately $310,000 from Hogeland's estate, and, in February, 2008, she received another $49,000. Despite the defendants' affirmative obligation to disclose these assets to the courts, they intentionally concealed this information, until, under orders from the trial court, Seaman, on May 27, 2008, finally disclosed the information.

On October 17, 2008, the trial court ruled that such information concerning the inheritance of Donna

---

[3] The complaint alleges that Seaman made such statements to the court on or about November 26, 2007, and June 3 and 18, 2008. Moch, Bartschi, Levesque and Dowd made such representations to the courts on or about March 15, 2007. Moch further concealed the truth from the court on February 14, 2006, and throughout the year of 2007 either herself or as co-counsel with Seaman.

[4] The complaint alleges that Seaman had knowledge of Donna Simms' inheritance no later than March, 2007; Bartschi, Levesque and Dowd had knowledge no later than November 4, 2006; and Moch had knowledge on or before February 14, 2006.

Simms improperly had been concealed from the court and from the plaintiff. The wrongful concealment of this financial information caused the plaintiff to incur more than $400,000 in legal expenses and other costs and expenses, including travel, medical expenses, loss of income and loss of investment value. Additionally, the plaintiff has suffered severe emotional distress because of these events.

The plaintiff filed an amended complaint in the Superior Court on June 19, 2009. Counts one and four were brought against Seaman for fraud and intentional infliction of emotional distress, respectively. Counts two and five were brought against Moch for fraud and intentional infliction of emotional distress, respectively. Counts three and six were brought against Bartschi, Levesque and Dowd for fraud and intentional infliction of emotional distress, respectively.[5] The defendants filed motions to strike these counts of the complaint on the ground of absolute immunity or privilege and on the alternate ground of failure to state a claim. The court, concluding that such claims against attorneys for conduct that occurred during judicial proceedings were barred as a matter of law by the doctrine of absolute immunity, granted the motions. The court upon motion, thereafter, rendered judgment in favor of the defendants. This appeal followed.

On appeal, the plaintiff claims that the court improperly struck the claims for fraud and intentional infliction of emotional distress filed against the defendants on the ground of absolute immunity and, thereafter, improperly rendered judgment in favor of the defendants. Specifically, the plaintiff claims that the court "erred in holding as a matter of law that attorneys are

---

[5] Counts seven and eight were brought against Donna Simms for intentional infliction of emotional distress and fraud, respectively. These counts, however, are not relevant to this appeal.

absolutely immune to suits for money damages for frauds and extreme and outrageous acts causing severe emotional distress perpetrated in their roles as adversary attorneys." The defendants argue that the court properly concluded that the claims, which stemmed from alleged misrepresentations and omissions that occurred in connection with judicial proceedings, are barred by the doctrine of absolute immunity. In the alternative, the defendants have presented alternate grounds for affirming the court's judgment; see Practice Book § 63-4 (a) (1) (A); arguing that the claims fail to state a cause of action for fraud or for the intentional infliction of emotional distress. Bartschi, Levesque and Dowd also raise as alternate grounds for affirmance that they, as appellate counsel for Donna Simms, did not owe a duty to disclose her inheritance and that their alleged conduct did not result in any damages to the plaintiff. After considering the relevant interests, we conclude that the plaintiff's claims against the defendant attorneys are barred by the doctrine of absolute immunity, also known as the litigation privilege.

Initially, we set forth the appropriate standard of review. "In an appeal from a judgment granting a motion to strike, we operate in accordance with well established rules. . . . A motion to strike challenges the legal sufficiency of a pleading . . . and, consequently, requires no factual findings by the trial court. As a result, our review of the [trial] court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . [I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Thus, we assume the truth of both the specific factual allegations and any facts fairly provable thereunder. In doing so, moreover, we read the allegations broadly . . . rather than narrowly.

. . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 129–30, 2 A.3d 859 (2010).

In this case, the court, ruling orally, stated: "[T]he law of lawyer immunity as set forth in *Petyan* v. *Ellis*, [200 Conn. 243, 245, 510 A.2d 1337 (1986)] . . . is that the . . . law of lawyer immunity from the civil process is absolute, and I . . . just don't see the exception for it that [the plaintiff's counsel] does. And, of course, lawyers have been accused . . . sometimes rightly, sometimes wrongly, of concealing evidence and fraudulently making claims for a very long time, but this rule has been unvarying, and, you know, frankly, my own view, for what it's worth, is that the courts could not function within it, which is not to say that lawyers may not be subject to appropriate discipline, professional discipline for . . . imposing a fraud on the court. That may very well be the case, but that is the path the law has chosen. . . . I just view the rule of *Petyan* v. *Ellis* as absolute, and what I'm going to do in each case is . . . simply grant the motion[s] citing *Petyan* v. *Ellis* . . . ."

The plaintiff argues that *Petyan* and the cases related to it concern defamation claims brought against attorneys and that such cases are not relevant here because we are concerned with intentional fraudulent conduct perpetrated on the court and on the plaintiff. He also argues that those cases "concern statements directed against the plaintiff in the subsequent litigation while the present case concerns fraud upon the court, which had the intended result of injuring the plaintiff." Furthermore, he contends, "there is nothing in the public policy of this state as articulated by the published decisions [that] precludes the imposition of liability upon

lawyers who engage in the sorts of intentionally fraudulent conduct alleged here." Finally, the plaintiff argues that this case is less akin to *Petyan* and more akin to *Mozzochi* v. *Beck*, 204 Conn. 490, 497, 529 A.2d 171 (1987), in which our Supreme Court stated that, under certain circumstances, third party abuse of process claims may be brought against attorneys. We are not persuaded by the plaintiff's arguments.

In *Mozzochi* v. *Beck*, supra, 204 Conn. 490, the primary case relied on by the plaintiff, our Supreme Court reiterated that it has granted absolute immunity to attorneys who made allegedly defamatory statements in the course of a judicial proceeding. The court noted that "[b]ecause litigants cannot have such access without being assured of the unrestricted and undivided loyalty of their own attorneys, we have afforded to attorneys, as officers of the court, absolute immunity from liability for allegedly defamatory communications in the course of judicial proceedings." Id., 494–95. The plaintiff relies on one statement in the *Mozzochi* case to support his position, and he argues that "if any prior case governs the result here, it is *Mozzochi* v. *Beck*, [supra, 495] in which the court held: 'Accordingly, we conclude that an attorney may be sued for misconduct by those who have sustained a special injury because of an unauthorized use of legal process.' " He provides no further analysis as to why this case might control and little analysis as to why immunity does not apply to a fraud claim against opposing counsel on the facts of this case other than stating that there is no policy that would prohibit it.[6]

---

[6] Our independent review of the law of other states has revealed that several of them have chosen to enact legislation specifically permitting civil actions that allege attorney acts of fraud, intentional misrepresentation, deceit or collusion meant to deceive the court or any opposing party; see, e.g., Ark. Code Ann. § 16-22-310 (1999); Cal. Bus. & Prof. Code § 6128 (Deering 2007); Ind. Code Ann. § 33-43-1-8 (LexisNexis 2004); Iowa Code § 602.10113 (2001); Minn. Stat. Ann. § 481.071 (2002); N.M. Stat. § 36-2-17 (1978); N.Y. Jud. Law § 487 (McKinney 2005); N.C. Gen. Stat. § 84-13 (2009);

Initially, insofar as the plaintiff argues that the defendants should not be afforded immunity for their "fraud on the court," our Supreme Court very clearly has held that Connecticut does not recognize a cause of action for "fraud on the court" under the circumstances of this case. As explained in *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 260 Conn. 766, 779, 802 A.2d 44 (2002): "[I]n the context of marital dissolution, the concept of fraud on the court is confined to situations where both parties join to conceal material information from the court. . . . That is not the situation in the present case. Second, in all contexts, when one party has made fraudulent representations to a court, or caused a court to be misled in some way, it could be said generally that the party has committed fraud on the court. . . . The statutory remedy for fraud on the court is that the Superior Court may grant a new trial for reasonable cause; General Statutes § 52-270 (a);[7] which includes every cause for which a court of equity could grant a new trial, such as, for example, fraud, accident and mistake." (Citations omitted; internal quotation marks omitted.) Accordingly, insofar as the plaintiff alleges a fraud on the court in the context of this civil litigation, such a claim is not viable under Connecticut law.

"[I]n the marital litigation context, [the] difference between a fraud on the court and a fraud on the adverse party . . . lies . . . in the nature of the conduct of the parties." *Billington* v. *Billington*, 220 Conn. 212, 224, 595 A.2d 1377 (1991). "Indeed, whenever one party has submitted a fraudulent financial affidavit with intent to induce the other party to rely thereon, it could be said

N.D. Cent. Code § 27-13-08 (2006); Okla. Stat. tit. 21 § 575 (2002); Wyo. Stat. Ann. § 33-5-114 (2009). Connecticut, however, has not chosen to enact such legislation.

[7] General Statutes § 52-270 (a) provides in relevant part: "The Superior Court may grant a new trial of any action that may come before it, for . . . the discovery of new evidence . . . or for other reasonable cause . . . ."

that he intended the court to rely thereon as well and thereby has, in some sense, 'defrauded' the court. Applying the 'fraud on the court' doctrine in such a case, however, would relieve the moving party from satisfying the remaining limitations on the granting of relief from a marital judgment secured by fraud . . . and would render those limitations superfluous." (Citation omitted.) Id.

"In Connecticut, the distinction between 'fraud on the court' and 'fraud on an adverse party' has received little discussion. In *Billington* . . . the Supreme Court concluded that there exists a distinction between 'fraud on the court' and 'fraud on an adverse party' in the marital litigation context, in that 'fraud on the court' is limited to instances in which 'both parties join to conceal material information from the court.' Id., 225. Once outside the marital context, however, the two concepts appear to receive similar treatment. In [*Varley* v. *Varley*, 180 Conn. 1, 428 A.2d 317 (1980)], the defendant alleged that 'the trial was tainted by (a) false testimony; (b) bribery; (c) misconduct of counsel; and (d) misconduct of the state referee.' [Id., 2 n.10].

"Although these allegations befit the 'fraud on the court' doctrine, at least according to federal definition, the *Varley* court referred only to the defendant's claim as that of fraud. In *Billington*, the court concluded that it was not 'fraud on the court' but 'fraud on an adverse party' when one party submitted a fraudulent affidavit with the intent to induce the other party to rely on it and that the moving party [seeking to open the judgment] should be required to satisfy the limitations of *Varley*.[8]

---

[8] In *Varley* v. *Varley*, supra, 180 Conn. 4, our Supreme Court imposed four requirements on those seeking relief from a judgment secured by fraud: "(1) There must have been no laches or unreasonable delay by the injured party after fraud was discovered. (2) There must have been diligence in the original action, that is, diligence in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different." See also *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 107, 952 A.2d 1 (2008).

*Billington* v. *Billington,* supra, 220 Conn. 224–25."
*Duart* v. *Dept. of Correction,* 116 Conn. App. 758, 771–72
n.9, 977 A.2d 670, cert. granted, 293 Conn. 937, 981 A.2d
1078 (2009).

Here, the plaintiff is not seeking to open a judgment
allegedly secured by fraud. Indeed, he admits that the
court was aware of the alleged fraud before rendering a
final decision on his motion for modification of alimony,
after remand from our Supreme Court, and that it "ruled
that information concerning the inheritance of Donna
Simms had been improperly concealed by counsel from
the court and from [the plaintiff]." The plaintiff now
has filed a separate common-law action for fraud, seek-
ing, in relevant part, to hold opposing counsel liable
for their alleged fraudulent conduct during proceedings
related to the plaintiff's motion for modification. The
trial court, however, in deciding the defendants'
motions to strike, has determined that such claims are
barred by the doctrine of absolute immunity. We agree.[9]

In *Billington* v. *Billington,* supra, 220 Conn. 218, however, our Supreme
Court abandoned the diligence requirement imposed by *Varley* in the marital
litigation context, and, in *Duart* v. *Dept. of Correction,* 293 Conn. 937, 981
A.2d 1078 (2009), our Supreme Court granted certification to appeal to
determine: "Whether the rule of *Varley* . . . which requires a movant to
demonstrate that the results at trial would have been different, applies to
posttrial motions alleging knowing and deliberate discovery misconduct?"

[9] The dissent asserts its view that absolute immunity does not bar a claim
of fraud against an opposing attorney for acts that occurred during judicial
proceedings, arguing that its view "is in accord with the Restatement of the
Law Governing Lawyers" and citing specifically to §§ 51 (4) (b) and 56.
Section 51 (4) (b), however, does not concern liability in the context of
litigation; rather, it concerns liability when the lawyer knowingly fails to
prevent his or her client from breaching a fiduciary duty that the *client*
owes to a third party. Furthermore, the commentary to § 51 explains in
relevant part: "Lawyers regularly act in disputes and transactions involving
nonclients who will foreseeably be harmed by inappropriate acts of the
lawyers. Holding lawyers liable for such harm is sometimes warranted. Yet
it is often difficult to distinguish between harm resulting from inappropriate
lawyer conduct on the one hand and, on the other hand, detriment to a
nonclient resulting from a lawyer's fulfilling the proper function of helping
a client through lawful means. Making lawyers liable to nonclients, moreover,
*could tend to discourage lawyers from vigorous representation.* Hence, a
duty of care to nonclients arises only in the limited circumstances described

in the Section." (Emphasis added.) 1 Restatement (Third), The Law Governing Lawyers § 51, comment (b), p. 358 (2000). The commentary further explains: "A lawyer representing a party in litigation *has no duty of care to the opposing party* under this Section, and hence no liability for lack of care, except in unusual situations such as when a litigant is provided an opinion letter from opposing counsel as part of a settlement . . . . Imposing such a duty *could discourage vigorous representation* of the lawyer's own client through fear of liability to the opponent. Moreover, the opposing party is protected by the rules and procedures of the adversary system and, usually, by counsel." (Citation omitted; emphasis added.) Id., § 51, comment (c), p. 358. On the basis of the commentary explaining § 51, it is clear that § 51 does not apply to the facts alleged in this case.

We also do not find § 56 particularly helpful to the question on appeal. Section 56 provides: "Except as provided in § 57 and in addition to liability under §§ 48-55, a lawyer is subject to liability to a client or nonclient when a nonlawyer would be in similar circumstances." The commentary to that section, which specifically addresses fraudulent and negligent misrepresentation, provides: "Misrepresentation is not part of proper legal assistance; vigorous argument often is. Thus, lawyers are civilly liable to clients and nonclients for fraudulent misrepresentation, *but are not liable for such conduct as* using legally innocuous hyperbole or proper argument in negotiations (see § 98, Comment c) or *presenting an argument to a tribunal in litigation.* On the liability of an agent for committing or knowingly assisting fraud on behalf of the principal, see Restatement Second, Agency § 348; on professional discipline, see § 5. Such liability may sometimes depend, among other factors, on whether the principal owed the person claiming to have been defrauded any duties of disclosure and on the nature of the lawyer's participation. On the general law of fraudulent misrepresentation, see Restatement Second, Torts §§ 525-551; Restatement Second, Contracts §§ 159-173. On a lawyer's liability to a nonclient for misrepresenting the lawyer's authority, see § 30 (3); Restatement Second, Agency § 330. *A lawyer is liable for negligent misrepresentation to a nonclient in the course of representing a client only when the lawyer owes the nonclient a duty of care under § 51.* See § 51, Comment e; Restatement Second, Torts §§ 552-552B. On evaluations undertaken for third persons, see § 95. On a lawyer's duties of honesty and disclosure to a client, see §§ 16 (3) and 20; Restatement Second, Torts § 551, Comments e and f." (Emphasis added.) 1 Restatement (Third), supra, § 51, comment (f), p. 418.

We acknowledge, however, that there are federal cases cited in the commentary to § 56 of the Restatement that hold that an attorney can be held liable for fraudulent conduct in the settlement or litigation process. See, e.g., *Robinson* v. *Volkswagenwerk AG*, 940 F.2d 1369, 1374 (10th Cir. 1991) (although opposing counsel enjoys absolute immunity from claims for defamation in litigation process, under federal common law absolute immunity not available for fraudulent discovery and litigation statements), cert. denied sub nom. *Herzfeld & Rubin* v. *Robinson*, 502 U.S. 1091, 112 S. Ct. 1160, 117 L. Ed. 2d 408 (1992); *Slotkin* v. *Citizens Casualty Co. of New York*, 614 F.2d 301, 304–305 (2d Cir. 1979) (holding that lawyers who affirmatively denied, on record, existence of excess insurance coverage, valued at $1 million, resulting in settlement of infant's medical malpractice case within

"The doctrine of absolute immunity as applied to statements made in the context of judicial and quasi-judicial proceedings is rooted in the public policy of

primary policy limits of only $200,000, liable for fraud), cert. denied, 449 U.S. 981, 101 S. Ct. 395, 396, 66 L. Ed. 2d 243 (1980); *Thompson* v. *Paul*, 657 F. Sup. 2d 1113, 1122–23 (D. Ariz. 2009) (fraud claim against defendant attorneys not barred where attorneys allegedly misrepresented that there were no pending criminal investigations or proceedings related to their client and such representation induced plaintiff to enter into settlement agreement in which she was to receive shares of client's stock); *Raymark Industries, Inc.* v. *Stemple*, 714 F. Sup. 460, 468 (D. Kan. 1988) (claim of fraud sufficient to defeat motion to dismiss where plaintiff alleged that in previous lawsuit lawyers falsely represented that their clients had viable claims when they either knew or recklessly disregarded the truth of those false claims). We conclude, however, that these cases applying federal common law (*Robinson*), holding under the law of other states that an attorney may be held liable for inducing, with misrepresentations, an opposing party to settle (*Slotkin* and *Thompson*) or alleging vexatious litigation (*Raymark Industries, Inc.*) are distinguishable from the case at bar.

The dissent also cites as support for its conclusion the case of *Schunk* v. *Zeff & Zeff, P.C.*, 109 Mich. App. 163, 311 N.W.2d 322 (1981), leave to appeal denied, 413 Mich. 924 (1982), as support for its position. That case, however, concerned claims of negligence and malicious prosecution brought against former opposing counsel. Id.,166. Furthermore, the court in *Schunk* concluded that summary judgment in favor of the former opposing counsel *was appropriate* on the negligence count because counsel did not owe a duty to the plaintiff. We are unable to discern how such a case supports the dissent's position in the present case. Id., 166–67.

The dissent also relies on *New York Cooling Towers, Inc.* v. *Goidel*, 10 Misc. 3d 219, 805 N.Y.S.2d 779 (2005), for the proposition that opposing counsel can be held liable for fraud in the litigation context. We recognize that the New York legislature has chosen to enact a statute specifically pertaining to such claims. See N.Y. Jud. Law § 487 (McKinney 2005); see also footnote 6 of this opinion. Contrary to New York, Connecticut has not chosen to enact such legislation.

The dissent also relies on *Mehaffy, Rider, Windholz & Wilson* v. *Central Bank Denver, N.A.*, 892 P.2d 230, 235 (Colo. 1995) (en banc). In that case, the defendant law firm had written opinion letters at the request of their clients in connection with the offering and sale of certain notes and bonds, which letters were meant to induce others to purchase those bonds. Id., 233. The court held that the defendant attorneys could be liable for negligent misrepresentation when the opinion letter contains material misstatements of fact that others relied on. Id. Again, we see no relevance to the present case.

The dissent next relies on *Pagliara* v. *Johnston Barton Proctor & Rose, LLP*, United States District Court, Docket No. 3:10-cv-00679 (M.D. Tenn. October 6, 2010). In *Pagliara*, the plaintiff asserted three causes of action against the defendant law firm, namely, breach of fiduciary duty, violation

of the Tennessee Consumer Protection Act and intentional infliction of harm. Id. The law firm filed a motion to dismiss the complaint, and, specifically on the count alleging breach of fiduciary duty, it argued that it had no fiduciary duty to the plaintiff, a nonclient. The District Court, however, concluded the complaint sufficiently alleged a fiduciary duty and that, "to the extent that negotiating and drafting an intentionally inflated settlement is fraud, participating lawyers are not absolved simply because they were representing a client." However, the court explained that in Tennessee there are only two instances when an attorney would owe a fiduciary duty, namely, when there is an attorney-client relationship or when an attorney exercises " 'dominion and control' " over another party. The court found that the plaintiff had alleged a degree of control in that case. We conclude that *Pagliara* is not on point with the present case, and it does not support the dissent's position.

Also relied on by the dissent is *Kramer* v. *Midamco, Inc.*, United States District Court, Docket No. 1:07 CV 3164 (N.D. Ohio October 19, 2009). In *Kramer*, the defendant alleged in a counterclaim that an organization called "Disabled Patriots of America" operates as a sham organization recruiting professional plaintiffs in order to generate litigation in the absence of any actual damages. In *Kramer*, the defendant claimed that the lawsuits have no legitimate purpose and are aimed solely at generating attorney's fees and expert fees. The plaintiff filed a motion to dismiss the counterclaim, asserting the litigation privilege as a defense. The court held that the litigation defense was narrowly construed and had not been extended to claims of fraud. The *Kramer* case, similar to a claim for abuse of process, involves attorneys who are alleged to have been utilizing the legal process merely for their personal gain, with no legitimate legal purpose. That is not the situation in the present case; it was the plaintiff in the present case who initiated the legal process.

The final case relied on by the dissent is *Taylor* v. *McNichols*, 243 P.3d 642 (Idaho 2010). In *Taylor*, the Idaho Supreme Court thoroughly discussed the litigation privilege and specifically held: "[A]s a general rule, where an attorney is sued by the current or former adversary of his client, as a result of actions or communications that the attorney has taken or made in the course of his representation of his client in the course of litigation, the action is presumed to be barred by the litigation privilege. An exception to this general rule would occur where the plaintiff pleads facts sufficient to show that the attorney has engaged in independent acts, that is to say acts outside the scope of his representation of his client's interests, or has acted solely for his own interests and not his client's." Id., 657. Accordingly, the court upheld the trial court's dismissal of the action. Id., 665. A thorough reading of this case leads us to the conclusion that it fully supports the majority opinion and is contrary to the stated position of the dissent.

Despite our disagreement with the dissent concerning the application of absolute immunity to alleged attorney fraud occurring during judicial proceedings, we recognize that attorneys personally can be liable for their fraudulent actions outside of judicial proceedings. See, e.g., *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 77–78, 952 A.2d 1 (2008); *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 831, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001).

encouraging witnesses, both complaining and testimonial, to come forward and testify in either criminal or civil actions. The purpose of affording absolute immunity to those who provide information in connection with judicial and quasi-judicial proceedings is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." (Internal quotation marks omitted.) *Rioux* v. *Barry*, 283 Conn. 338, 343, 927 A.2d 304 (2007).

"[A]bsolute immunity in defamation . . . presents a conflict or antinomy between two principles equally regarded by the law—the right of the individual, on one hand, to enjoy his reputation unimpaired by defamatory attacks, and, on the other hand, the necessity, in the public interest, of a free and full disclosure of facts in the conduct of the legislative, executive and judicial departments of government. . . . With respect to statements made in the course of a judicial proceeding, it is widely accepted that the public's interest in the unhampered operation of the government, when exercising [its judicial] functions, outweighs an individual's interest in the preservation of reputation. . . . Accordingly, we consistently have held that a statement is absolutely privileged if it is made in the course of a judicial proceeding and relates to the subject matter of that proceeding." (Citations omitted; internal quotation marks omitted.) *Gallo* v. *Barile*, 284 Conn. 459, 470, 935 A.2d 103 (2007).

"Ultimately, however, the issue is whether the public interest is advanced by affording . . . statements absolute immunity . . . . Indeed, this court candidly has observed that, in determining whether a statement is made in the course of a judicial proceeding, it is important to consider whether there is a sound public

policy reason for permitting the complete freedom of expression that a grant of absolute immunity provides. . . . In other words, whether and what form of immunity applies in any given case is a matter of policy that requires a balancing of interests." (Citation omitted; internal quotation marks omitted.) Id., 471, quoting *Rioux* v. *Barry*, supra, 283 Conn. 346.

In *Mozzochi* v. *Beck*, supra, 204 Conn. 490, our Supreme Court stated that attorneys who made allegedly defamatory comments in the course of a judicial proceeding were absolutely immune from suit. The court explained that "[b]ecause litigants cannot have such access without being assured of the unrestricted and undivided loyalty of their own attorneys, we have afforded to attorneys, as officers of the court, absolute immunity from liability for allegedly defamatory communications in the course of judicial proceedings.[10]

[10] The dissent argues that it would be "ironic to posit that extending absolute immunity from fraud to attorneys in their role as litigators would further the policy goal of encouraging honesty in judicial proceedings." The same easily could be said of claims for defamation for false statements made in the course of judicial proceedings. See *Daley* v. *Aetna Life & Casualty Co.*, 249 Conn. 766, 795, 734 A.2d 112 (1999) ("[t]o prevail on a common-law defamation claim, a plaintiff must prove that the defendant published *false statements* about her that caused pecuniary harm" [emphasis added]). Yet, our law has chosen to protect such statements so as not to interfere with an attorney's zealous advocacy of her or his client. We find particularly meaningful to our analysis in the present case the explanation offered by Judge Learned Hand in justifying absolute immunity for federal prosecutors: "It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good

. . . For other causes of action, however, the exigencies of the adversary system have not been deemed to require absolute immunity for attorneys. We have assumed, without discussion, that an attorney may be sued in an action for vexatious litigation, arguably because that cause of action has built-in restraints that minimize the risk of inappropriate litigation." (Citations omitted.) Id., 494–95.

In *Rioux*, our Supreme Court explained that "in the context of a [judicial or] quasi-judicial proceeding, absolute immunity does not attach to statements that provide the ground for the tort of vexatious litigation, but does bar a suit alleging that those same statements constituted an intentional interference with contractual or beneficial relations." *Rioux* v. *Barry*, supra, 283 Conn. 343. The court explained that it reached this conclusion on the basis of the fundamental purpose that underlies the doctrine of absolute immunity. The court explained: "The doctrine of absolute immunity as applied to statements made in the context of judicial and quasi-judicial proceedings is rooted in the public policy of encouraging witnesses, both complaining and testimonial, to come forward and testify in either criminal or civil actions. The purpose of affording absolute immunity to those who provide information in connection with judicial and quasi-judicial proceedings is that in certain situations the public interest in having people

faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Gregoire* v. *Biddle*, 177 F.2d 579, 581 (2d Cir. 1949), cert. denied, 339 U.S. 949, 70 S. Ct. 803, 94 L. Ed. 1363 (1950); see also *Barese* v. *Clark*, 62 Conn. App. 58, 59, 773 A.2d 946 (2001) (recognizing that state's attorneys are immune from tort liability for acts committed in performance of their duties).

speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . . *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 786, 865 A.2d 1163 (2005); *Petyan* v. *Ellis*, [supra, 200 Conn. 246]. [T]he possibility of incurring the costs and inconvenience associated with defending a [retaliatory] suit might well deter a citizen with a legitimate grievance from filing a complaint. . . . *Craig* v. *Stafford Construction, Inc.*, 271 Conn. 78, 95, 856 A.2d 372 (2004). Put simply, absolute immunity furthers the public policy of encouraging participation and candor in judicial and quasi-judicial proceedings. This objective would be thwarted if those persons whom the common-law doctrine was intended to protect nevertheless faced the threat of suit. In this regard, the purpose of the absolute immunity afforded participants in judicial and quasi-judicial proceedings is the same as the purpose of the sovereign immunity enjoyed by the state. *Chadha* v. *Charlotte Hungerford Hospital*, supra, 787. As a result, courts have recognized absolute immunity as a defense in certain retaliatory civil actions in order to remove this disincentive and thus encourage citizens to come forward with complaints or to testify." (Internal quotation marks omitted.) *Rioux* v. *Barry*, supra, 343–44.

The court then considered whether claims of vexatious litigation and intentional interference with contractual or beneficial relations fall under the absolute immunity doctrine. Id., 344. The court explained that "the fact that the tort of vexatious litigation . . . employs a test that balances the need to encourage complaints against the need to protect the injured party's interests counsels strongly against a categorical or absolute immunity from a claim of vexatious litigation. . . . Vexatious litigation requires a plaintiff to establish that: (1) the previous lawsuit or action was initiated or procured by the defendant against the plaintiff; (2) the

defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice; (3) the defendant acted without probable cause; and (4) the proceeding terminated in the plaintiff's favor. . . . [F]or purposes of the tort of vexatious litigation, the previous litigation that terminated in the plaintiff's favor may be an administrative, rather than a judicial, proceeding. . . . These stringent requirements provide adequate room for both appropriate incentives to report wrongdoing and protection of the injured party's interest in being free from unwarranted litigation. Thus, because the tort of vexatious litigation strikes the proper balance, it is unnecessary to apply an additional layer of protection to would-be litigants in the form of absolute immunity." (Citations omitted.) Id., 347.

The *Rioux* court then went on to apply this same analytical framework to the issue of whether absolute immunity bars a claim of intentional interference with contractual or beneficial relations. *Rioux* v. *Barry*, supra, 283 Conn. 350. The court explained: "First, the underlying purpose of absolute immunity applies just as equally to [the tort of intentional interference with contractual or beneficial relations] as it does to the tort of defamation. Second, this tort does not contain within it the same balancing of relevant interests that are provided in the tort of vexatious litigation. Third, the elements of intentional interference with contractual or beneficial relations do not provide the same level of protection against the chilling of a witness' testimony as do the elements of vexatious litigation. A claim for intentional interference with contractual relations requires the plaintiff to establish: (1) the existence of a contractual or beneficial relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to interfere with the relationship; (4) that the interference was tortious; and (5) a loss suffered by the plaintiff that was caused by the defendant's tortious

conduct. . . . These elements simply do not have the same stringency as those that are the hallmark of the elements of a claim for vexatious litigation. For this reason, insofar as the balancing that applies, this tort is more like defamation than vexatious litigation. Therefore, the same balancing test applies to it as applies to defamatory statements: if made in the course of a judicial or quasi-judicial proceeding, they are absolutely immune." (Citations omitted.) Id., 350–51.

We conclude that this same reasoning applies in the present case to bar the plaintiff's suit for common-law fraud based on statements or omissions made by counsel in the course of a judicial proceeding. The stringent requirements that are needed to maintain a vexatious litigation suit; see id., 347; or a suit for abuse of process simply are not present in connection with the fraud counts at issue in this case, which are based on alleged misstatements or failures to make required statements during proceedings in court where, in the event of an attorney's violation of his or her responsibilities to the court, counsel or the parties, the court may impose suitable sanctions. See, e.g., *Wyszomierski* v. *Siracusa*, 290 Conn. 225, 234–36, 963 A.2d 943 (2009); *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 9–11, 776 A.2d 1115 (2001); *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 393, 685 A.2d 1108 (1996), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 154–55, 735 A.2d 333 (1999) (en banc); see also *Fattibene* v. *Kealey*, 18 Conn. App. 344, 358–60, 558 A.2d 677 (1989). As explained in *Taylor* v. *McNichols*, 243 P.3d 642 (Idaho 2010), "a lack of civil redress does not mean immunity from consequence and punishment. . . . [O]ur Rules of Civil Procedure, our Rules of Professional Conduct, and the court's inherent authority provide adequate safeguards to protect against abusive and frivolous litigation tactics." (Internal quotation marks omitted.) Id., 658.

Public policy does not bar by absolute immunity claims of vexatious litigation against opposing counsel because there are built-in hurdles and restraints in that cause of action that minimize the risk of inappropriate litigation; see *Mozzochi* v. *Beck*, supra, 204 Conn. 495; while still providing incentives to report wrongdoing. See *Rioux* v. *Barry*, supra, 283 Conn. 347. This balance is crucial. Before a potential plaintiff may bring a claim for vexatious litigation, he must have been the defendant in a previous suit that was initiated with malice and without probable cause, and that suit must have been decided in his favor. See id. The tort of abuse of process has similar stringent requirements. Such restraints against inappropriate litigation are not present in connection with the fraud counts alleged in this case.

"The essential elements of an action in common law fraud . . . are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. . . . Under a fraud claim of this type, the party to whom the false representation was made claims to have relied on that representation and to have suffered harm as a result of the reliance." (Citation omitted; internal quotation marks omitted.) *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, supra, 260 Conn. 777–78. Much like the claim for intentional interference with contractual or beneficial relations in *Rioux*, the common-law fraud counts in the present case are more like defamation causes of action than vexatious litigation causes of action. Applying the *Rioux* balancing test to this case, there are not sufficient built-in restraints to prevent unwarranted litigation while, at the same time, encouraging attorneys to provide full and robust representation of their clients and to provide such clients with

their unrestricted and undivided loyalty. See *Mozzochi v. Beck*, supra, 204 Conn. 497. Although the dissent argues that the built-in restraint for claims of fraud against opposing counsel arising from acts or omissions during litigation is the heightened burden of proof required to prove the case; the burden of proof, whatever it might be for a particular cause of action, does not minimize the risk of unwarranted litigation, which is one of the key policy reasons for applying the immunity doctrine. See *Rioux v. Barry*, supra, 283 Conn. 348.

Were a cause of action for fraud against opposing counsel for alleged acts or omissions during the course of litigation permitted, it is foreseeable that in virtually every case a lawyer would know something about his client or the case that the opposing party would think is important to the case. If opposing counsel is not protected by immunity as explained in *Rioux*, there would be little or no disincentive to stop a disgruntled or unhappy opposing party from suing counsel for fraud for failing to disclose this information. As with the tort of defamation, there are no safeguards to prevent unwarranted ligation, and it certainly is foreseeable that allowing such a cause of action to commence would have a chilling effect on the attorney-client relationship and on an attorney's zealous representation of his or her client. Therefore, we conclude in this case, much like our Supreme Court did when considering the claim for intentional interference with contractual or beneficial relations in *Rioux*, that the result of the balancing test applied to the fraud claims at issue is that the defendants' misstatements or omissions in making required statements are more akin to defamatory statements, and, thus, "if made in the course of a judicial or quasi-judicial proceeding, they are absolutely immune."[11] Id., 351.

---

[11] Because the plaintiff's claims for intentional infliction of emotional distress are founded on the same conduct as his fraud claims, the absolute immunity doctrine also bars recovery on those claims. See *Alexandru v.*

Furthermore, we also note: "While no civil remedies can guard against lies, the oath and the fear of being charged with perjury are adequate to warrant an absolute privilege for a witness' statements. Parties or their counsel who behave outrageously are subject to punishment for contempt of the court. Parties and their counsel who abuse the process by bringing unfounded actions for personal motives are subject to civil liability for vexatious suit or abuse of process." *DeLaurentis* v. *New Haven*, 220 Conn. 225, 264, 597 A.2d 807 (1991). Additionally, attorneys who engage in fraudulent acts or other similarly serious acts of misconduct during the course of their in-court representation of clients may be subject to a number of possible sanctions, including disbarment. See, e.g., *Statewide Grievance Committee* v. *Burton*, 282 Conn. 1, 5, 917 A.2d 966 (2007); *Burton* v. *Mottolese*, 267 Conn. 1, 16–17, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004); *Briggs* v. *McWeeny*, 260 Conn. 296, 335–36, 796 A.2d 516 (2002); *Henry* v. *Statewide Grievance Committee*, 111 Conn. App. 12, 21, 957 A.2d 547 (2008); *Statewide Grievance Committee* v. *Egbarin*, 61 Conn. App. 445, 450, 767 A.2d 732, cert. denied, 255 Conn. 949, 769 A.2d 64 (2001); *Statewide Grievance Committee* v. *Fountain*, 56 Conn. App. 375, 379–80, 743 A.2d 647 (2000).

In summary, the essence of the plaintiff's allegations is that in the postjudgment court proceedings between the plaintiff and his former spouse, the defendant attorneys misstated or failed to state material facts in circumstances when required to do so, and that such conduct

*Dowd*, 79 Conn. App. 434, 438 n.4, 830 A.2d 352 (claims for invasion of privacy and intentional infliction of emotional distress, founded on same conduct as libel and slander claims, barred by absolute immunity), cert. denied, 266 Conn. 925, 835 A.2d 471 (2003); see also *DeLaurentis* v. *New Haven*, 220 Conn. 225, 264–65, 597 A.2d 807 (1991) (absolutely privileged statements cannot be basis for action alleging intentional infliction of emotional distress).

resulted in the defrauding of the plaintiff. The actions complained of thus are quite similar to the making of statements in court proceedings that are alleged to be defamatory. A misstatement in court in a pending case, or an omission when information should be provided to the court, is different in scope from the filing of counts in a complaint with malice and without probable cause or from the abuse of process in connection with initiating such a suit and, thus, improperly invoking the power of the court against an adversary. There is a strong public policy that seeks to ensure that attorneys provide full and robust representation to their clients and that they provide such clients with their unrestricted and undivided loyalty. See *Mozzochi* v. *Beck*, supra, 204 Conn. 497. A cause of action that might inhibit such representation must have built-in restraints to prevent unwarranted litigation. See *Rioux* v. *Barry*, supra, 283 Conn. 348. Such restraints are not present in this case.

On the basis of the foregoing analysis, we conclude that the court properly granted the defendants' motions to strike.

The judgment is affirmed.

In this opinion STOUGHTON, J., concurred.

BISHOP, J., concurring and dissenting. Attorneys take an oath to "do nothing dishonest . . . not knowingly allow anything dishonest to be done in court, and . . . inform the court of any dishonesty of which [they] have knowledge . . . ." General Statutes § 1-25. Because I cannot agree with the majority that lawyers should be absolutely immune, as a matter of law, from claims sounding in fraud, I respectfully dissent from that part of the majority opinion which affirms the judgment in favor of the defendants Penny Q. Seaman, Susan A. Moch, Kenneth J. Bartschi, Brendon P. Levesque

and Karen L. Dowd on the fraud claims alleged by the plaintiff, Robert Simms. In all other respects, I concur with the majority opinion.

Whether or not to extend immunity to attorneys for their conduct in the course of legal representation is a question of public policy. *Rioux* v. *Barry*, 283 Conn. 338, 343, 927 A.2d 304 (2007). Because, to date, there is no Connecticut appellate decisional law addressing the issue of whether attorneys are immune from suit in actions based upon fraud, the question we must answer in this appeal is whether sound public policy supports the notion that lawyers should be immune from the consequences of their fraudulent behavior. My answer to that question is, "No."

In answering this question in the affirmative, the majority appears to rely on the Supreme Court's analysis in *Rioux* v. *Barry*, supra, 283 Conn. 338, and, by implication, the majority appears to liken fraudulent behavior to the intentional interference with contractual relations. Unlike the majority, I do not believe the behaviors in these two intentional torts are sufficiently parallel to extend the insulation provided in *Rioux* to fraudulent behavior. In *Rioux*, the court held that, in the context of a quasi-judicial proceeding, although absolute immunity does not attach to statements that provide the basis for a vexatious litigation claim, it does bar a suit alleging that those same statements constitute an intentional interference with contractual or beneficial relations. Id., 350–51. The court noted that because the requisite elements of vexatious litigation effectively strike the balance between the public interest of encouraging complaining witnesses to come forward and protecting private individuals from false and malicious claims, the additional protections afforded by the doctrine of absolute immunity do not extend in the context of such a claim. Id., 348–49. In other words, "an attorney may be sued in an action for vexatious litigation . . .

because that cause of action has built-in restraints that minimize the risk of inappropriate litigation." (Internal quotation marks omitted.) Id., 348, quoting *Mozzochi* v. *Beck*, 204 Conn. 490, 495, 529 A.2d 171 (1987). The court concluded, however, that because the tort of intentional interference with contractual or beneficial relations does not contain the restraints that are provided in vexatious litigation, absolute immunity barred the plaintiff's claim of intentional interference with contractual or beneficial relations against the defendants with respect to those statements. *Rioux* v. *Barry*, supra, 350–51.

I, too, find the reasoning in *Rioux* and *Mozzochi* instructive. Like a claim for vexatious litigation, a claim for fraud includes a more stringent requirement that eliminates the need to extend the protection of absolute immunity to prevent inappropriate litigation. While claims for defamation and intentional interference must be proven by a fair preponderance of the evidence, a claim for fraud requires a higher standard of proof, a higher threshold which provides more protection for attorneys than the lower burden of proof applicable to most tort claims, including the intentional interference with contractual or beneficial relations. "[A]t common law, fraud must be proven by clear and convincing evidence." *Stuart* v. *Stuart*, 297 Conn. 26, 40, 996 A.2d 259 (2010).[1] In light of the higher burden of proof imposed upon a plaintiff alleging fraud, a claim for fraud is readily distinguishable from claims for defamation or intentional interference, and, consequently, like a

---

[1] "Proof by clear and convincing evidence is an intermediate standard generally used in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing, or when particularly important individual rights are involved. . . . The preponderance of the evidence standard indicates that the litigants should share equally the risk of error . . . because the interests at stake have roughly equal societal importance." (Citation omitted; internal quotation marks omitted.) *State* v. *Davis*, 229 Conn. 285, 293–94, 641 A.2d 370 (1994).

claim for vexatious litigation, provides a balance between the public and private interests involved.

Additionally, the policy considerations set forth in *Rioux* are not applicable to the case at hand. In *Rioux*, the court explained that its ruling was based upon the underlying public policy that is furthered by the extension of absolute immunity, to "encourag[e] participation and candor in judicial and quasi-judicial proceedings," noting that such policy would "be thwarted if those persons whom the common-law doctrine was intended to protect nevertheless faced the threat of suit." (Internal quotation marks omitted.) *Rioux* v. *Barry*, supra, 283 Conn. 344.[2] It would, indeed, be ironic to posit that extending absolute immunity from fraud to attorneys in their role as litigators would further the policy goal of encouraging honesty in judicial proceedings. Indeed, logic dictates the opposite conclusion.

Immunizing lawyers from claims based on fraudulent behavior serves no legitimate public policy. Reciprocally, leaving counsel subject to claims for fraud does not create the risk of unduly dampening an attorney's advocacy on behalf of a client.[3] Thus, the conclusion I reach is not inconsistent with the policy expressed in *Mozzochi*. In *Mozzochi*, the court considered "the scope of the potential liability of an attorney for abuse of

[2] The majority also appears to endorse the notion that there are policy reasons to immunize attorneys from the consequences of fraudulent behavior in conjunction with litigation that may not protect attorneys from suit in the event their fraudulent conduct relates to nonlitigation representation. Unlike the majority, I can fathom no basis for such a distinction as, in both circumstances, lawyers committing fraud do not serve their clients by doing so.

[3] The notion that opening the door to fraud claims against attorneys will cause a floodgate of litigation is without factual underpinnings. To the contrary, I am unaware that our courts are inundated with claims of attorney malpractice or claims of vexatious litigation, both torts for which there is no policy-driven immunization.

process arising out of the attorney's professional representation of the interests of his or her clients" and noted that "[s]uch a cause of action must be reconciled with our responsibility to assure unfettered access to our courts. Because litigants cannot have such access without being assured of the unrestricted and undivided loyalty of their own attorneys, we have afforded to attorneys, as officers of the court, absolute immunity from liability for allegedly defamatory communications in the course of judicial proceedings." *Mozzochi* v. *Beck*, supra, 204 Conn. 494–95.

Although I agree that an attorney's relationship with his or her clients is paramount, the duty of advocacy exists in a broader context. As noted in the Rules of Professional Conduct, an attorney has a duty to his client, the court, and to the community. See generally Rules of Professional Conduct, preamble. In examining the balance between the public interest in a client's right to counsel's zealous advocacy of his or her cause and a litigant's right to have claims regarding an attorney fairly aired, I do not believe that an attorney's "robust representation of the interests of his or her client"; *Mozzochi* v. *Beck*, supra, 204 Conn. 497; can fairly be construed to insulate an attorney from claims made by third parties based on counsel's allegedly fraudulent conduct.

The view I express is in accord with the Restatement (Third) of the Law Governing Lawyers and Thornton on Attorneys at Law, which posit, generally, that a lawyer may be held liable for fraud. See 1 Restatement (Third), The Law Governing Lawyers §§ 51 and 56 (2000);[4] 1 E. Thornton, Attorneys at Law (1914) § 295.

---

[4] Section 51 of the Restatement (Third) of the Law Governing Lawyers provides in relevant part: "For purposes of liability . . . a lawyer owes a duty to use care within the meaning of § 52 . . . (4) to a nonclient when and to the extent that . . . (b) the lawyer knows that appropriate action by the lawyer is necessary with respect to a matter within the scope of the representation to prevent or rectify the breach of a fiduciary duty owed by the client to the nonclient, where (i) the breach is a crime or fraud . . . ."

Although, as noted, Connecticut has no appellate decisional law directly on point, several other jurisdictions have adhered to the rule espoused by those authorities.[5] For instance, the Michigan Court of Appeals, citing to Thornton, has held: "An attorney's liability does not end with being answerable to his client. He is also liable to third persons who have suffered injury or loss in consequence of fraudulent or tortious conduct on his part." (Internal quotation marks omitted.) *Schunk* v. *Zeff & Zeff, P.C.*, 109 Mich. App. 163, 180, 311 N.W.2d 322 (1981) (MacKenzie, J., dissenting), leave to appeal denied, 413 Mich. 924 (1982), relying on *Rosenberg* v. *Cyrowski*, 227 Mich. 508, 513, 198 N.W. 905 (1924). Similarly, the Supreme Court of New York has stated that attorneys are "liable to nonclients for acts of fraud, collusion, malicious acts or other special circumstances . . . ." (Citations omitted; internal quotation marks omitted.) *New York Cooling Towers, Inc.* v. *Goidel*, 10 Misc. 3d 219, 222, 805 N.Y.S.2d 779 (2005). And the Colorado Supreme Court has noted that "an attorney is not liable to a non-client absent a finding of fraud or malicious conduct by the attorney." *Mehaffy, Rider, Windholz & Wilson* v. *Central Bank Denver, N.A.*, 892 P.2d 230, 235 (Colo. 1995) (en banc); see also *McGee* v. *Hyatt Legal Services, Inc.*, 813 P.2d 754, 757 (Colo. App. 1990) (citing *Weigel* v. *Hardesty*, 37 Colo. App. 541, 543, 549 P.2d 1335 [1976] [when performing obligations to client, attorney liable to third parties only when conduct fraudulent or malicious]), cert. denied, 1991 Colo. LEXIS 519 (Colo. July 29, 1991). Citing to 1 Restatement (Third), supra, § 56, which states that "a lawyer is subject to liability to a client or nonclient

---

Section 56 provides in relevant part: "[A] lawyer is subject to liability to a client or nonclient when a nonlawyer would be in similar circumstances."

[5] Although cases cited herein from other jurisdictions do not involve adjudication of fraud claims, the reviewing court, in each of the cited opinions, noted with approval that liability for fraudulent conduct is an exception to the immunity afforded to lawyers.

when a nonlawyer would be in similar circumstances," the United States District Court for the Middle District of Tennessee has held that a lawyer is not shielded from liability for fraudulent conduct. *Pagliara* v. *Johnston Barton Proctor & Rose, LLP*, United States District Court, Docket No. 3:10-cv-00679 (M.D. Tenn. October 6, 2010). The Ohio Supreme Court has stated that the privilege is limited, and, it has not extended this immunity to fraud claims. See *Kramer* v. *Midamco, Inc.*, United States District Court, Docket No. 1:07 CV 3164 (N.D. Ohio October 19, 2009), citing *Bigelow* v. *Brumley*, 138 Ohio St. 574, 580, 37 N.E.2d 584 (1941); *Erie County Farmers' Ins. Co.* v. *Crecelius*, 122 Ohio St. 210, 215, 171 N.E. 97 (1930). Finally, in this regard, the Idaho Supreme Court has stated: "An attorney engaging in malicious prosecution, which is necessarily pursued in bad faith, is not acting in a manner reasonably calculated to advance his client's interests, and an attorney engaging in fraud is likewise acting in a manner foreign to his duties as an attorney." *Taylor* v. *McNichols*, 243 P.3d 642, 656 (Idaho 2010).[6]

To be sure, not all courts have followed this path. Some jurisdictions have extended the immunity to fraudulent conduct by attorneys in the context of judicial or quasi-judicial proceedings. For example, see *Olsen* v. *Harbison*, 191 Cal. App. 4th 325, 333, 119 Cal. Rptr. 3d 460 (2010) ("The breadth of the litigation privilege cannot be understated. It immunizes defendants from virtually any tort liability [including claims for fraud], with the sole exception of causes of action for malicious prosecution."), review denied, 2011 Cal. LEXIS 2266 (Cal. March 2, 2011); see also *Fraidin* v. *Weitzman*, 93 Md. App. 168, 237, 611 A.2d 1046 (1992) (to remove privilege, attorney must possess desire to harm, which is independent of desire to protect client),

---

[6] Additionally, as acknowledged by the majority, some states have enacted legislation expressly permitting civil actions for fraud against attorneys.

cert. denied, 329 Md. 109, 617 A.2d 1055 (1993); *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 408 (Tex. App. 2005) (litigation privilege bars fraud claim based on actions such as filing lawsuits and pleadings, providing legal advice, and awareness of settlement negotiations), review denied, 2006 Tex. LEXIS 155 (Tex. March 3, 2006).

Mindful of the various approaches taken by other jurisdictions, I am persuaded by those that adhere to the Restatement (Third) of the Law Governing Lawyers, as I find no policy worthy of the public that would extend the protection of immunity to counsel for the consequences of his or her fraudulent conduct.

As an alternate ground for affirming the judgment of the trial court, the defendants assert that the plaintiff has failed to set forth a cognizable cause of action for fraud, an argument that they raised in their motions to strike. Although a cursory review of the plaintiff's complaint reveals that, indeed, some of the necessary elements of a cause of action in fraud do not appear to be alleged, the trial court did not address that argument in granting the defendants' motions to strike. Rather, the court struck the fraud claims solely on the basis of absolute immunity. If the court had granted the motions to strike on the ground that the plaintiff had failed to set forth an action for fraud, rather than on the basis of immunity, the plaintiff would have been afforded the opportunity to replead, assuming that a good faith basis exists for formulating a proper complaint containing the elements necessary for stating a claim based on fraud. See Practice Book § 10-44. Thus, because the motions to strike were granted solely on the basis of immunity, I would reverse the judgment as to the fraud claims and remand the matter to the trial court for consideration of the remaining arguments set forth in the defendants' motions to strike.