******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STEPHEN W. SCHOLZ *v.* JUDA J. EPSTEIN
(AC 42419)

Alvord, Elgo and Eveleigh, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant, an attorney, for alleged statutory theft arising from the defendant's conduct during prior judicial proceedings involving the foreclosure of the plaintiff's property. The defendant, acting as attorney for B Co., brought an action against the plaintiff to foreclose a municipal lien that B Co. had purchased from the city of Bridgeport. The plaintiff thereafter commenced this action alleging that the defendant, in the course of the foreclosure proceeding, made false representations to the court with the intent to default the plaintiff for failure to appear and to render a judgment of strict foreclosure. The plaintiff alleged that the defendant intended to deprive the plaintiff of his property and/or to appropriate the property to B Co., committing theft pursuant to statute (§ 52-564). The court granted the defendant's motion to dismiss the action for lack of subject matter jurisdiction on the ground that the defendant was protected by absolute immunity pursuant to the litigation privilege, and, from the judgment rendered thereon, the plaintiff appealed to this court. *Held*:

1. The trial court properly granted the defendant's motion to dismiss, this court having determined, as a matter of first impression, that the defendant was protected by absolute immunity from the plaintiff's action for statutory theft under § 52-564: following an evaluation of the competing public policy considerations, including the underlying purpose of judicial proceedings, the similarity between statutory theft and claims of fraud and defamation, which are protected by the privilege, and the availability of other remedies, this court reasoned that the plaintiff's claim of statutory theft did not require a consideration of whether the underlying purpose of the foreclosure litigation was improper, rather, the plaintiff's claim raised the issue of whether an attorney's conduct, while representing a client during a judicial proceeding brought for a proper purpose, was entitled to absolute immunity; moreover, a claim of statutory theft under § 52-564 is more analogous to a claim of fraud, as opposed to a claim of vexatious litigation or abuse of process, because the plaintiff had to prove that the defendant obtained the property in the foreclosure action through false representations made to the court in the foreclosure action, and, because the privilege protected the defendant's communications, they were shielded by absolute immunity, regardless of the nature of the plaintiff's cause of action; furthermore, the required elements of statutory theft do not contain inherent safeguards against inappropriate retaliatory litigation, public policy does not support permitting claims of statutory theft against attorneys, as it would inhibit candor in judicial proceedings, and attorneys who engage in serious misconduct, such as that alleged by the plaintiff, are subject to a number of possible sanctions, and the availability of these alternative remedies serves as a deterrent to attorney misconduct.

2. The plaintiff could not prevail on his claim that, even if the litigation privilege applied to the defendant's conduct during the foreclosure proceeding, the trial court improperly granted the defendant's motion to dismiss where some of the defendant's alleged conduct was perpetrated outside the scope of judicial proceedings: although the plaintiff claimed that the defendant delayed the recording of the certificate of foreclosure, in light of the fact that the litigation privilege applies to documents prepared in connection with a judicial proceeding, the defendant's action was clearly conducted in connection with the foreclosure proceeding and fell within the scope of the litigation privilege; this court rejected the plaintiff's claim that the subsequent sale of the foreclosed property constituted conduct by the defendant outside the scope of the privilege, as the complaint did not contain any allegations of wrongdoing by the defendant with respect to the sale of the property, rather, the complaint alleged that the defendant's misconduct eventually resulted in the sale of the property by B Co., and, as the complaint did not allege that the

defendant was involved in wrongdoing with respect to the sale after title had vested in B Co., or that the sale was procured through the services of the defendant, the plaintiff's claim lacked merit; moreover, even construing the allegations of the complaint as alleging a claim for statutory theft on the basis of the defendant's conduct concerning the sale of the property, the sale of the foreclosed property was an integral step in the foreclosure process, and the defendant's conduct in assisting B Co. with that sale was relevant to that proceeding and, thus, fell within the scope of the litigation privilege.

Argued January 13—officially released June 16, 2020

*Procedural History*

Action to recover damages for statutory theft, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Bellis, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Jonathan J. Klein*, for the appellant (plaintiff).

*Daniel J. Krisch*, with whom, on the brief, were *Joshua M. Auxier* and *Stephen P. Fogerty*, for the appellee (defendant).

*Opinion*

EVELEIGH, J. This appeal concerns an issue of first impression in Connecticut: whether an attorney is protected by absolute immunity under the litigation privilege from a claim of statutory theft[1] arising from the attorney's conduct during prior judicial proceedings. The plaintiff, Stephen W. Scholz, appeals from the judgment of the trial court granting the motion of the defendant, Attorney Juda J. Epstein, to dismiss the plaintiff's action for statutory theft for lack of subject matter jurisdiction on the ground that the defendant was protected by absolute immunity pursuant to the litigation privilege. On appeal, the plaintiff claims that the court erred in (1) granting the defendant's motion to dismiss and determining that the litigation privilege affords the defendant absolute immunity from the plaintiff's action for statutory theft, which was brought pursuant to General Statutes § 52-564, (2) ruling that the public policy considerations underlying the litigation privilege are served by affording the defendant absolute immunity from civil liability for his alleged criminal conduct that was the basis for the statutory theft claim, (3) its application of the balancing of interests test set forth in *Simms* v. *Seaman*, 308 Conn. 523, 543–44, 69 A.3d 880 (2013), and (4) granting the motion to dismiss and determining that the defendant was absolutely immune from liability for statutory theft where some of the defendant's alleged criminal conduct was perpetrated outside the scope of judicial proceedings. We affirm the judgment of the trial court.

The following facts, as alleged in the plaintiff's complaint, and procedural history are relevant to our review of the claims on appeal. The plaintiff, who resides at 405 Helen Street in Bridgeport, became the owner of an adjacent lot located at 744 Stillman Street in Bridgeport (Stillman property). When the plaintiff failed to pay the real property taxes on the Stillman property in the amount of $1018.74 that were owed to the city of Bridgeport (city), the city recorded a certificate of lien on the land records on April 7, 2014, for the unpaid taxes, interest and related charges. The lien was thereafter sold to Benchmark Municipal Tax Services, Ltd. (Benchmark), pursuant to an assignment that was recorded on the land records on April 29, 2014. Benchmark is a client of the defendant, who is an attorney licensed to practice law in the state of Connecticut. Pursuant to a writ of summons and complaint dated April 22, 2016, the defendant, acting as Benchmark's attorney, commenced a civil action against the plaintiff to foreclose the lien. According to the complaint in the present case, "[t]he summons recited the address of the owner of the [Stillman] property, [the plaintiff], as '69 Settlers Farm Road, Monroe, CT 06468,' " and "[t]he state marshal's return of service, dated April 26 and 29, 2016 . . . does not reflect that service was made on [the plaintiff], nor

does it describe any effort made by the state marshal to locate [the plaintiff] or to attempt to effect service on him."

The plaintiff further alleged in his complaint that "throughout his prosecution of the foreclosure action, [the defendant] knew that [the plaintiff] resided at 405 Helen Street . . . not 69 Settlers Farm Road" in Monroe by virtue of certain facts. Those facts include the following: (1) a tax bill for the property that was issued by the city and included the plaintiff's correct address, which was a matter of public record; (2) a demand letter written by the defendant to the plaintiff, addressed to the plaintiff at 405 Helen Street in Bridgeport; (3) a letter written by the defendant to the plaintiff rejecting a payment the plaintiff tendered, which also was addressed to the plaintiff at 405 Helen Street in Bridgeport; (4) a marshal's return of service from a previous tax lien foreclosure action brought against the plaintiff by the defendant on behalf of Benchmark regarding real property taxes that were due on the property at 405 Helen Street, which stated that service was made on the plaintiff at his usual place of abode, 405 Helen Street in Bridgeport; and (5) evidence showing that the defendant had served the plaintiff with other documents at that address as well.

According to paragraph 12 of the complaint, the defendant filed a motion to cite in the plaintiff as a defendant in the civil action to foreclose the lien "on the basis of six specific representations he made to the court, all of which were materially false and which [the defendant] knew were materially false when he made them, namely, that: [1] at the time the action was commenced, he believed that . . . [the plaintiff] had been properly served; [2] [the plaintiff] was unable to be served; [3] [the defendant] directed a state marshal to effectuate service upon [the plaintiff], but [the plaintiff] was not at any of the 'possible locations'; [4] [the defendant] had done his due diligence in trying to locate [the plaintiff] but 'all possible locations' had been exhausted . . . [5] the notice most likely to come to the attention of [the plaintiff] was the publication of an order of notice of the institution of the foreclosure action in the Connecticut Post, a newspaper circulated in the Bridgeport area, once a week for two successive weeks; and [6] 'the last known address of [the plaintiff] is unknown.' " Paragraph 13 of the complaint alleged that the defendant "knew that those six representations he made to the court were materially false when he made them" for a number of reasons, including that the defendant knew that the marshal's return of service did not reflect that any service was made on the plaintiff and that the return of service did not describe any effort made by the marshal to locate the plaintiff, and that the defendant knew the possible locations where the plaintiff could have been found, and knew that the plaintiff resided, and could have been properly served, at

405 Helen Street in Bridgeport. In paragraph 16, the plaintiff further alleged that the defendant perpetrated "a fraud upon the court" through his conduct in "knowingly making materially false representations to the court with the intent to induce and cause the court to rely on those statements to order notice by publication and, ultimately, to default [the plaintiff] for failure to appear and to enter a judgment of strict foreclosure . . . ."

On November 9, 2016, the defendant filed a motion to default the plaintiff for failure to appear in the foreclosure action, which was granted, and, on December 2, 2016, the defendant filed a motion for a judgment of strict foreclosure. According to the complaint, the defendant sought a judgment of strict foreclosure, rather than a foreclosure by sale, by misleading "the court to believe that [the plaintiff's] equity in the property was tens of thousands of dollars less than it truly was by procuring and filing with the court an appraisal report . . . [that] was flawed on its face . . . ." The court granted the motion for a judgment of strict foreclosure on January 9, 2017. The plaintiff alleged that "[b]y wrongfully misleading the court into entering a judgment of strict foreclosure, rather than a judgment of foreclosure by sale, [the defendant] purposefully evaded the requirement of posting a sign on the property within a few feet of the front door of [the plaintiff's] residence at 405 Helen Street . . . announcing a scheduled foreclosure auction sale, and thereby purposefully deprived [the plaintiff] of notice that a foreclosure of the property was pending, and purposefully deprived him of the opportunity to redeem the property from the foreclosure or otherwise to act to protect his ownership interest in the property."

The plaintiff further alleged that "[a]s a result of the conduct of [the defendant] [as] alleged . . . [the plaintiff] was unaware . . . that the tax lien foreclosure action had even been commenced, let alone that it had gone to judgment, that the law days had run, that Benchmark had taken title to the property by strict foreclosure and that Benchmark had sold the property to third parties for a windfall profit . . . ." Because the plaintiff operated a business on both the property at 405 Helen Street and the Stillman property, he was suddenly faced with the realization that he no longer owned the Stillman property and that his business and livelihood might be destroyed by the loss of the Stillman property. Therefore, he alleged that he was "forced to buy back the [Stillman] property . . . ." Accordingly, in paragraph 38 of the complaint the plaintiff alleged that the defendant "wrongfully engaged in the conduct alleged . . . with the intent to deprive [the plaintiff] of his property and/or to appropriate the property to Benchmark, thereby committing [statutory] theft in violation of . . . § 52-564, and causing [the plaintiff] great financial loss."

On June 19, 2018, the defendant filed a motion to dismiss the plaintiff's action for lack of subject matter jurisdiction on the basis of the litigation privilege. In support of his motion, the defendant claimed that because all of the acts alleged in the complaint were committed by the defendant in connection with the litigation process in the foreclosure action, and because he was "acting within the litigation process as counsel for the lienholder in the foreclosure action," he was shielded by the litigation privilege from the plaintiff's claim for statutory theft. On July 17, 2018, the plaintiff filed a memorandum of law in opposition to the defendant's motion to dismiss, claiming that "[t]he absolute immunity of the litigation privilege does not apply to a complaint [that] sounds in [statutory] theft."

In a memorandum of decision dated December 11, 2018, the trial court granted the defendant's motion to dismiss, stating: "Connecticut appellate courts have not yet determined whether the litigation privilege provides attorneys with absolute immunity from claims of statutory theft based on their conduct in judicial proceedings." After undertaking the balancing analysis set forth in *Simms* v. *Seaman*, supra, 308 Conn. 543–44, the court found that the allegations of the complaint were "more akin to a claim of fraud than a claim of abuse of process or vexatious litigation," "the elements of statutory theft do not incorporate protections for attorneys against unwarranted litigation," there were "other available remedies to address the conduct complained of by the plaintiff," and "other decisions of the Superior Court have extended the privilege to claims of statutory theft." Accordingly, the court determined that, in "[b]alancing the policy considerations, the plaintiff's claim of statutory theft stemming from the defendant's alleged conduct during the judicial proceeding is barred by absolute immunity." From the judgment rendered dismissing the action, the plaintiff appealed to this court.

Before turning to the merits of the plaintiff's claims on appeal, we first set forth our standard of review of a court's decision on a motion to dismiss, which is well settled. See *Ion Bank* v. *J.C.C. Custom Homes, LLC*, 189 Conn. App. 30, 37, 206 A.3d 208 (2019). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Iino* v. *Spalter*, 192 Conn. App. 421, 425, 218 A.3d 152 (2019). "When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that

alone. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Traylor* v. *State*, 332 Conn. 789, 792–93 n.6, 213 A.3d 467 (2019); see also *Dorry* v. *Garden*, 313 Conn. 516, 521, 98 A.3d 55 (2014); *Connecticut Center for Advanced Technology, Inc.* v. *Bolton Works, LLC*, 191 Conn. App. 842, 844–45, 216 A.3d 813, cert. denied, 333 Conn. 930, 218 A.3d 69 (2019). "In an appeal from the granting of a motion to dismiss on the ground of subject matter jurisdiction, this court's review is plenary." (Internal quotation marks omitted.) *Board of Education* v. *Bridgeport*, 191 Conn. App. 360, 366, 214 A.3d 898 (2019); see also *Walenski* v. *Connecticut State Employees Retirement Commission*, 185 Conn. App. 457, 464, 197 A.3d 443, cert. denied, 330 Conn. 951, 197 A.3d 390 (2018).

I

The plaintiff's first three claims on appeal concern the issue of whether the trial court improperly granted the defendant's motion to dismiss and determined that the litigation privilege affords the defendant absolute immunity from the plaintiff's action for statutory theft under § 52-564. We conclude that the court properly granted the defendant's motion to dismiss and determined that the defendant was protected by absolute immunity from such a claim.

A

Before we address the merits of that claim, we begin with a discussion of the history of the litigation privilege in Connecticut, which developed in the context of defamation claims. See *Bruno* v. *Travelers Cos.*, 172 Conn. App. 717, 725, 161 A.3d 630 (2017). "Connecticut has long recognized the litigation privilege . . . [and has extended it] to judges, counsel and witnesses participating in judicial proceedings." (Internal quotation marks omitted.) Id. "The principle that defamatory statements by attorneys during judicial proceedings are absolutely privileged when they are pertinent and material to the controversy is . . . well established in American jurisprudence. The formulation of the rule in the Restatement (Second) of Torts, which has been adopted in nearly every state . . . provides: 'An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.' 3 Restatement (Second), supra, § 586, p. 247; see also W. Prosser & W. Keeton, [Torts (5th Ed. 1984)] § 114, p. 817. One of the comments to § 586 of the Restatement (Second) further provides that the privilege 'protects the attorney from liability in an action for defamation irrespective of his purpose

in publishing the defamatory matter, his belief in its truth, or even his knowledge of its falsity.' 3 Restatement (Second), supra, § 586, comment (a), p. 247.

"Three rationales have been articulated in support of the absolute privilege. . . . First, and most important, it 'protects the rights of clients who should not be imperiled by subjecting their legal advisors to the constant fear of lawsuits arising out of their conduct in the course of legal representation. The logic is that an attorney preparing for litigation must not be hobbled by the fear of reprisal by actions for defamation . . . which may tend to lessen [counsel's] efforts on behalf of clients.' . . . This includes protection from intrusive inquiries into the motives behind an attorney's factual assertions . . . and, in the case of alleged omissions or the concealment of evidence, from having to resist or defend against attempts to uncover information that arguably could have been produced at trial but might be subject to the attorney-client privilege. Second, the privilege furthers 'the administration of justice by preserving access to the courts. If parties could file retaliatory lawsuits and cause the removal of their adversary's counsel on that basis, the judicial process would be compromised.' . . . Third, there are remedies other than a cause of action for damages that can be imposed by the court under court rules, the court's inherent contempt powers and the potential for disciplinary proceedings through state and local bar associations." (Citations omitted; footnotes omitted.) *Simms* v. *Seaman*, supra, 308 Conn. 534–36.

In *Rioux* v. *Barry*, 283 Conn. 338, 343–44, 927 A.2d 304 (2007), our Supreme Court explained the purpose and public policy underlying the doctrine of absolute immunity: "The doctrine of absolute immunity as applied to statements made in the context of judicial and quasi-judicial proceedings is rooted in the public policy of encouraging witnesses, both complaining and testimonial, to come forward and testify in either criminal or civil actions. The purpose of affording absolute immunity to those who provide information in connection with judicial and quasi-judicial proceedings is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . . Put simply, absolute immunity furthers the public policy of encouraging participation and candor in judicial and quasi-judicial proceedings. This objective would be thwarted if those persons whom the common-law doctrine was intended to protect nevertheless faced the threat of suit. In this regard, the purpose of the absolute immunity afforded participants in judicial and quasi-judicial proceedings is the same as the purpose of the sovereign immunity enjoyed by the state. . . . As a result, courts have recognized absolute immunity as a defense in certain retaliatory

civil actions in order to remove this disincentive and thus encourage citizens to come forward with complaints or to testify." (Citations omitted; internal quotation marks omitted.)

Our Supreme Court has expanded the doctrine of absolute immunity afforded to statements made during judicial proceedings to bar retaliatory civil actions beyond defamation claims. For example, in *Peytan* v. *Ellis*, 200 Conn. 243, 250–55, 510 A.2d 1337 (1986), the court determined that absolute immunity barred a claim of intentional infliction of emotional distress that was based on an allegedly defamatory statement made by the defendant employer in a fact-finding form that had been submitted to the defendant by the Employment Security Division of the Department of Labor in connection with the processing of the plaintiff's claim for unemployment compensation benefits. See also *Simms* v. *Seaman*, supra, 308 Conn. 569–70. In *Rioux* v. *Barry*, supra, 283 Conn. 350, the court held that the plaintiff's claim of intentional interference with contractual or beneficial relations was barred by absolute immunity, and, in *Simms* v. *Seaman*, supra, 308 Conn. 545, the court determined that attorneys are protected by absolute immunity under the litigation privilege for claims of fraud based on their conduct during judicial proceedings. See also *Tyler* v. *Tatoian*, 164 Conn. App. 82, 83–84, 93, 137 A.3d 801 (affirming trial court's determination that defendant trustee was shielded by absolute immunity for claims of fraud and violations of Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and rejecting assertion that such claims fell under exception to absolute immunity for causes of action alleging improper use of judicial system), cert. denied, 321 Conn. 908, 135 A.3d 710 (2016). "[I]n expanding the doctrine of absolute immunity to bar claims beyond defamation, [our Supreme Court] has sought to ensure that the conduct that absolute immunity is intended to protect, namely, participation and candor in judicial proceedings, remains protected regardless of the particular tort alleged in response to the words used during participation in the judicial process. Indeed, [the court] recently noted that [c]ommentators have observed that, because the privilege protects the *communication*, the nature of the theory [on which the challenge is based] is irrelevant." (Emphasis in original; internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, 310 Conn. 616, 628, 79 A.3d 60 (2013); see also *Bruno* v. *Travelers Cos.*, supra, 172 Conn. App. 726–27.

"In expanding the scope of the litigation privilege . . . our Supreme Court has recognized a distinction between attempting to impose liability upon a participant in a judicial proceeding for the words used therein and attempting to impose liability upon a litigant for his improper use of the judicial system itself. . . . In this regard, [it has] refused to apply absolute immunity

to causes of action alleging the improper use of the judicial system. . . . *MacDermid, Inc.* v. *Leonetti*, [supra, 310 Conn. 629]; see also, e.g., id., 625–26 (litigation privilege did not shield claim by employee against employer alleging that employer had brought action against employee solely in retaliation for employee exercising his rights under Workers' Compensation Act); *Rioux* v. *Barry*, supra, 283 Conn. 343 (in the context of a quasi-judicial proceeding, absolute immunity does not attach to statements that provide the ground for the tort of vexatious litigation); *Mozzochi* v. *Beck*, 204 Conn. 490, 495, 529 A.2d 171 (1987) (an attorney may be sued for misconduct by those who have sustained a special injury because of an unauthorized use of legal process). . . .

"In *Rioux*, [our Supreme Court] emphasized that whether and what form of immunity applies in any given case is a matter of policy that requires a balancing of interests. . . . [It] also observed that, in previous cases that . . . presented a question of the applicability of the doctrine of absolute immunity, [it] applied the general principles underlying that doctrine to the particular context of those cases. . . . Furthermore, the cases following *Rioux* have not relied exclusively or entirely on the factors enumerated therein, but instead have considered the issues relevant to the competing interests in each case." (Internal quotation marks omitted.) *Tyler* v. *Tatoian*, supra, 164 Conn. App. 88–90. "In examining the competing interests and public policies at stake, our Supreme Court has focused on the need to ensure candor from all participants in the judicial process." Id., 90. Finally, the court also has noted that federal precedent "weighs in favor of applying the privilege to state law claims alleging fraud"; *Simms* v. *Seaman*, supra, 308 Conn. 562; and that "courts in many jurisdictions have followed an approach that has strengthened the litigation privilege, not abrogated it. As commentators and scholars have observed, [a]s new tort theories have emerged, courts have not hesitated to expand the privilege to cover theories, actions, and circumstances never contemplated by those who formulated the rule in medieval England." (Internal quotation marks omitted.) Id., 566.

B

With this backdrop in mind, we turn to the plaintiff's claim in the present case that the trial court improperly concluded that the litigation privilege affords the defendant absolute immunity from the plaintiff's action for statutory theft under § 52-564. In support of his claim, the plaintiff raises a number of arguments. Specifically, he claims that the trial court erred in ruling that the public policy considerations underlying the litigation privilege are served by absolutely immunizing the defendant from liability for statutory theft. In that vein, the plaintiff argues that the defendant's actions amounted

to larceny; that "[a]cts of theft have nothing whatsoever to do with advancing the right or need to advocate to speak out the whole truth, freely and fearlessly"; that "[t]heft committed by an attorney, especially when committed in court or in his filings in the publicly accessible docket, does grievous public harm and denigrates and brings shame upon the profession"; and that "the defendant engaged in conduct which is closely akin to a claim of abuse of process to which the litigation privilege does not apply, as his theft constituted the improper use of litigation to accomplish a purpose for which it was not designed. *Mozzochi* v. *Beck*, [supra, 204 Conn. 494]." (Internal quotation marks omitted.)

Neither party has cited, nor are we aware of, any appellate authority determining whether absolute immunity protects an attorney from a claim of statutory theft based on the attorney's conduct during judicial proceedings.[2] Accordingly, this court must begin its analysis by applying the public policy underlying the litigation privilege to a cause of action for statutory theft to determine whether the protection of absolute immunity should extend to such an action. In making that determination, we are guided by the principle that the issue of whether to recognize a claim for statutory theft against an attorney as one to which the litigation privilege does not apply "is a matter of policy for the court to determine based on the changing attitudes and needs of society." *Craig* v. *Driscoll*, 262 Conn. 312, 339, 813 A.2d 1003 (2003); see also *Simms* v. *Seaman*, supra, 308 Conn. 545.

In the present case, we must decide whether a cause of action for statutory theft may be brought against an attorney arising out of actions taken by the attorney during judicial proceedings. A determination of this issue, therefore, requires this court to evaluate the competing public policy considerations, including the underlying purpose of judicial proceedings, the similarity between statutory theft and claims of fraud and defamation, which are protected by the privilege, and the availability of other remedies. See *Simms* v. *Seaman*, supra, 308 Conn. 545–54.[3]

1

Underlying Purpose of Judicial Proceedings

The first factor that our Supreme Court in *Simms* considered in evaluating whether claims of fraud against an attorney are precluded by absolute immunity was whether such claims "challenge the underlying purpose of the litigation rather than an attorney's role as an advocate for his or her client." Id., 546; see also *MacDermid, Inc*. v. *Leonetti*, supra, 310 Conn. 629 (our Supreme Court has "refused to apply absolute immunity to causes of action alleging the improper use of the judicial system"). Claims that challenge the underlying purpose of litigation, for which attorneys are not pro-

tected by absolute immunity, include claims of abuse of process, which "must allege the improper use of litigation to accomplish a purpose for which it was not designed." (Internal quotation marks omitted.) *Simms* v. *Seaman*, supra, 308 Conn. 546; see also *Mozzochi* v. *Beck*, supra, 204 Conn. 495 ("attorney may be sued for misconduct by those who have sustained a special injury because of an unauthorized use of legal process"). Likewise, attorneys are not shielded by absolute immunity from claims of vexatious litigation, which must allege, inter alia, that the defendant acted without probable cause, primarily for a purpose other than that of bringing an offender to justice. *Rioux* v. *Barry*, supra, 283 Conn. 347.

The primary reason for excluding claims that challenge the underlying purpose of litigation from the ambit of the litigation privilege is that they contain inherent safeguards against inappropriate retaliatory litigation. For instance, our Supreme Court in *Rioux* explained that "the tort of vexatious litigation is treated differently because of [the] restraints built into it by virtue of its stringent requirements. . . . [W]ere we to provide absolute immunity for the communications underlying the tort of vexatious litigation, we would effectively eliminate the tort. Unlike the communications underlying the tort of defamation, virtually any initiation or procurement of a previous lawsuit would necessarily be part of any judicial proceeding. Thus, the tort of vexatious litigation would virtually always be subject to absolute immunity." (Citations omitted.) Id., 347–48. As the court observed, "the requisite elements of the tort of vexatious litigation effectively strike the balance between the public interest of encouraging complaining witnesses to come forward and protecting the private individual from false and malicious claims [and, thus] [i]t is unnecessary and undesirable to extend the additional protection afforded by the doctrine of absolute immunity to defendants in vexatious litigation claims." Id., 348-49.

In concluding that attorneys subject to claims of fraud for their conduct in the course of litigation are entitled to absolute immunity, the court in *Simms* explained that such claims do not require a consideration of whether the underlying purpose of litigation was improper. See *Simms* v. *Seaman*, supra, 308 Conn. 546-47. With respect to such claims, what is being challenged is the conduct of an attorney in his or her role as an advocate for his or her client in a judicial proceeding. Id.; see also *Barrett* v. *United States*, 798 F.2d 565, 573 (2d Cir. 1986) (fact that counsel may or may not have engaged in questionable or harmful conduct during course of representation in litigation is irrelevant; immunity attaches to function, not in how counsel performed). Consequently, our Supreme Court concluded that the "reasons for precluding use of the litigation privilege in cases alleging abuse of process and vexa-

tious litigation have no application to claims of fraud." *Simms* v. *Seaman*, supra, 547. That reasoning applies equally to the plaintiff's claim of statutory theft in the present case that the defendant made material misrepresentations to the court in the foreclosure action and misled the court to render a judgment of strict foreclosure, rather than a foreclosure by sale. Such a claim does not require a consideration of whether the underlying purpose of the litigation was improper. Instead, the plaintiff's claim concerns the issue of whether an attorney's conduct, while representing a client during a judicial proceeding that was brought for a proper purpose, is entitled to absolute immunity. We conclude, therefore, that the plaintiff's claim of statutory theft against the defendant attorney does not subvert the underlying purpose of a judicial proceeding. See id., 545–47.

Applying these considerations to the present case, we conclude that a statutory theft action against an attorney for the attorney's conduct in the course of representing his or her client in litigation does not implicate a challenge to the propriety of the underlying litigation. Like fraud and defamation claims in the context of a judicial proceeding, a statutory theft action focuses on the allegedly improper conduct of an attorney in the role of advocate for a client. In the present case, the statutory theft claim concerned the conduct of the defendant attorney in a foreclosure proceeding. For example, the plaintiff alleged that, by fraudulent and knowing misrepresentations in effecting notice and securing a judgment of strict foreclosure, rather than a foreclosure by sale, the defendant misappropriated the plaintiff's property on behalf of his client, Benchmark.[4] The underlying litigation was brought by Benchmark, which was assigned by the city the right to initiate foreclosure proceedings with respect to its tax lien against the plaintiff. As evident in the present case, the statutory theft action challenges the conduct of the defendant attorney during the underlying foreclosure litigation, but not the propriety of the foreclosure action itself. Therefore, there is no basis for precluding the application of absolute immunity to a statutory theft claim that does not challenge the underlying purpose of the litigation but, instead, challenges the alleged misconduct of the defendant in his role as an attorney on behalf of his client.

### 2

### Statutory Theft as Compared to Fraud and Defamation

With respect to the second factor, our Supreme Court in *Simms* compared common-law fraud with the elements of defamation, and distinguished those claims from claims alleging vexatious litigation and abuse of process, for which the litigation privilege does not apply, explaining that the latter claims challenge the underlying purpose of the litigation, whereas the former

claims challenge an attorney's role as an advocate for his or her client. See id., 546-51. The court in *Simms* further explained that "a claim of fraud is similar to a claim of defamation. A defamation action is based on the unprivileged communication of a false statement that tends either to harm the reputation of another by lowering him or her in the estimation of the community or to deter others from dealing or associating with him or her. . . . To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement. . . .

"The essential elements of an action in [common-law] fraud . . . are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act [on] it; and (4) the other party did so act [on] that false representation to his injury. . . . [T]he party to whom the false representation was made [must claim] to have relied on that representation and to have suffered harm as a result of the reliance. . . .

"As indicated by this comparison, claims of defamation and fraud during a judicial proceeding contemplate allegations that a party suffered harm because of a falsehood communicated by the opponent's attorney, namely, the publication of a false statement that harms the other party's reputation in the case of defamation, and a false representation made as a statement of fact that induces the other party to act to his detriment in the case of fraud. . . .

"Claims of defamation and fraud are also similar because they are difficult to prove but easy for a dissatisfied litigant to allege. . . . [A]ttorneys are entitled to absolute immunity for allegedly defamatory statements in part because of the difficulty of ascertaining their truth." (Citations omitted; internal quotation marks omitted.) Id., 547–49. Finally, the court in *Simms* observed that "abrogation of the litigation privilege to permit claims of fraud could open the floodgates to a wave of litigation in this state's courts challenging an attorney's representation, *especially in foreclosure* and marital dissolution actions in which emotions run high and there may be a strong motivation on the part of the losing party to file a retaliatory lawsuit. Abrogation of the privilege also would apply to the claims of pro se litigants who do not understand the boundaries of the adversarial process, which could give rise to much unnecessary and harassing litigation." (Emphasis added.) Id., 568.

Accordingly, the court in *Simms* ultimately concluded that the similarities between common-law fraud

and defamation warranted extending absolute immunity to claims of fraud against an attorney. Id., 547-51. In particular, it noted that because "the communication of a falsehood is an essential element of both defamation and fraud, the litigation privilege provides a complete defense to both causes of action." Id., 548-49. In the present case, in considering the elements of statutory theft, we conclude that, as applied to the defendant's alleged misconduct, a statutory theft cause of action similarly warrants the application of the privilege.

The tort of statutory theft is codified in § 52-564. This court has noted that, according to § 52-564, "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages. We consistently have held that statutory theft under § 52-564 is synonymous with larceny under General Statutes § 53a-119. . . . A person commits larceny within the meaning of . . . § 53a-119 when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. An owner is defined, for purposes of § 53a-119, as any person who has a right to possession superior to that of a taker, obtainer or withholder. General Statutes § 53a-118 (a) (5)." (Emphasis omitted; internal quotation marks omitted.) *Bongiorno* v. *Capone*, 185 Conn. App. 176, 198–99, 196 A.3d 1212, cert. denied, 330 Conn. 943, 195 A.3d 1134 (2018). Section 53a-119 sets forth a nonexhaustive list of acts that constitute larceny and provides that larceny includes, but is not limited to, "[o]btaining property by false pretenses. A person obtains property by false pretenses when, by any false token, pretense or device, he obtains from another any property, with intent to defraud him or any other person." General Statutes § 53a-119 (2). "[O]ur state has a well defined public policy against theft." *Private Healthcare Systems, Inc.* v. *Torres*, 84 Conn. App. 826, 832, 855 A.2d 987 (2004), appeal dismissed, judgment vacated on other grounds, 278 Conn. 291, 898 A.2d 768 (2006); see also *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, 89 Conn. App. 680, 685, 874 A.2d 839, cert. denied, 275 Conn. 912, 882 A.2d 673 (2005); *Board of Education* v. *Local 566, Council 4, AFSCME*, 43 Conn. App. 499, 505, 683 A.2d 1036 (1996), cert. denied, 239 Conn. 957, 688 A.2d 327 (1997).

Given that "[s]tatutory theft under § 52-564 is synonymous with larceny under . . . § 53a-119"; (internal quotation marks omitted) *Bongiorno* v. *Capone*, supra, 185 Conn. App. 198–99; and that a person commits larceny under § 53a-119 (2) when property is obtained by false pretenses, that is, when, by any false token, pretense or device, the party "obtains from another any property, with intent to defraud him or any other person"; General Statutes § 53a-119 (2); we conclude

that a claim of statutory theft is more analogous to a claim of fraud, as opposed to a claim of vexatious litigation or abuse of process.[5] Like fraud, statutory theft is an intentional tort. See *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 771, 905 A.2d 623 (2006). In order to prove his claim of statutory theft, the plaintiff had to prove that the defendant obtained the property in the foreclosure action through false pretenses, namely, through a number of false representations made to the court in the underlying foreclosure proceeding. Thus, essential to the plaintiff's statutory theft claim in the present case was the communication of a falsehood by the defendant. In *Simms* v. *Seaman*, supra, 308 Conn. 548–49, our Supreme Court addressed similar circumstances and stated: "[B]ecause the privilege protects the *communication*, the nature of the theory [on which the challenge is based] is irrelevant. . . . Accordingly, because the communication of a falsehood is an essential element of both defamation and fraud, the litigation privilege provides a complete defense to both causes of action." (Citations omitted; emphasis in original; internal quotation marks omitted.)

The statutory theft claim in the present case falls squarely within that analysis. The plaintiff essentially alleges that the defendant's false communications to the court in the foreclosure action led to the theft of his property. Because the privilege protects the defendant's communications, they are shielded by absolute immunity, regardless of the nature of the plaintiff's cause of action. See *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 628; *Bruno* v. *Travelers Cos.*, supra, 172 Conn. App. 727.

Furthermore, the required elements of statutory theft do not contain inherent safeguards against inappropriate retaliatory litigation as do the elements of a claim for vexatious litigation. The elements required to prove a claim for vexatious litigation—that the plaintiff was a defendant in a prior action that was decided in his or her favor and that was commenced without probable cause and for an improper purpose—"establish a very high hurdle that minimizes the risk of inappropriate litigation while still providing an incentive to report wrongdoing, thus protecting 'the injured party's interest in being free from unwarranted litigation.' " *Simms* v. *Seaman*, supra, 308 Conn. 549. Even though fraud must be proven by a more exacting standard of clear and convincing evidence; *Stuart* v. *Freiberg*, 316 Conn. 809, 821, 116 A.3d 1195 (2015); the burden of proof for a claim of statutory theft is the preponderance of the evidence standard. *Fernwood Realty, LLC* v. *AeroCision, LLC*, 166 Conn. App. 345, 359–60, 141 A.3d 965, cert. denied, 323 Conn. 912, 149 A.3d 981 (2016). Nevertheless, our Supreme Court in *Simms* determined that the heightened burden of proof for fraud was not sufficient to reduce the risk of inappropriate litigation. Specifically, the court explained: "[T]he required elements

of fraud, like the required elements of defamation and interference with contractual or beneficial relations that the court discussed in *Rioux*, do not provide the same level of protection against the chilling effects of a potential lawsuit as the required elements of vexatious litigation . . . [which] requires proof that the plaintiff was the defendant in a prior lawsuit decided in his favor and that the lawsuit was commenced without probable cause and for an improper purpose. . . . These requirements establish a very high hurdle that minimizes the risk of inappropriate litigation while still providing an incentive to report wrongdoing, thus protecting the injured party's interest in being free from unwarranted litigation. . . . The clear and convincing burden of proof required for a claim of fraud, however, is not an equivalent safeguard, and we do not agree with those who argue that this heightened standard alone would reduce the risk of retaliatory litigation to the same degree as the elements of vexatious litigation." (Citations omitted; internal quotation marks omitted.) *Simms* v. *Seaman*, supra, 549. Accordingly, given our Supreme Court's determination that the heightened burden of proof for proving fraud alone does not provide a sufficient safeguard against the risk of inappropriate litigation, it necessarily follows that a claim of statutory theft, with its lesser standard of preponderance of the evidence, suffers the same infirmity.

In the present case, the plaintiff alleges that the defendant made a number of representations to the court in the foreclosure proceeding that were materially false and which the defendant knew were false when he made them, and that the defendant made the representations with the intent to induce the court to act on them to the plaintiff's detriment. The court in *Simms*, in addressing similar circumstances with respect to a claim of fraud, which requires a false representation that was known to be untrue at the time it was made and that was made with the intent to induce the party to act, stated: "[B]ecause opinions might differ on those questions, allowing them to be submitted to a jury could have . . . deleterious effects . . . including judgments against innocent attorneys. Moreover, it would be relatively easy to file a spurious claim of fraud because attorneys must be selective in deciding what information to disclose in the course of representing their clients and a litigant could well believe that undisclosed information later discovered to have been in the attorney's possession should have been disclosed, thus giving rise to a claim of fraud based on misrepresentation. Finally, the mere possibility of such claims, which could expose attorneys to harassing and expensive litigation, would be likely to inhibit their freedom in making good faith evidentiary decisions and representations and, therefore, negatively affect their ability to act as zealous advocates for their clients." (Footnote omitted.) Id., 550–51.

The allegations in the present case similarly involve open questions on which opinions could differ. We conclude that public policy does not support permitting claims of statutory theft against attorneys, as it would inhibit participation and candor in judicial proceedings, as well as "have a chilling effect on the attorney-client relationship and on an attorney's zealous representation of his or her client." *Simms* v. *Seaman*, 129 Conn. App. 651, 672, 23 A.3d 1 (2011), aff'd, 308 Conn. 523, 69 A.3d 880 (2013). As this court has explained previously: "If opposing counsel is not protected by immunity as explained in *Rioux*, there would be little or no disincentive to stop a disgruntled or unhappy opposing party from suing counsel for fraud for failing to disclose [the] information." Id. In the context of foreclosure proceedings, where emotions run high because parties stand to lose property on which a home or business may be located, if counsel are not protected by absolute immunity, such a result could open the floodgates to a rash of claims against opposing counsel for fraud or statutory theft where a disgruntled party is dissatisfied with the loss of the foreclosed property. That would be contrary to the public policy underlying the litigation privilege. See id., 674 ("There is a strong public policy that seeks to ensure that attorneys provide full and robust representation to their clients and that they provide such clients with their unrestricted and undivided loyalty. See *Mozzochi* v. *Beck*, supra, 204 Conn. 497. A cause of action that might inhibit such representation must have built-in restraints to prevent unwarranted litigation."); see also *Simms* v. *Seaman*, supra, 308 Conn. 562–63 ("the privilege is not intended to protect counsel who may be motivated by a desire to gain an unfair advantage over their client's adversary from subsequent prosecution for bad behavior but, rather, to encourage robust representation of clients and to protect the vast majority of attorneys who are innocent of wrongdoing from harassment in the form of retaliatory litigation by litigants dissatisfied with the outcome of a prior proceeding"); *Perugini* v. *Giuliano*, 148 Conn. App. 861, 873, 89 A.3d 358 (2014) ("the law protects attorneys from suit in order to encourage zealous advocacy on behalf of their clients, unrestrained by the fear of exposure to tort liability").

### 3

### Other Remedies

We next examine whether claims of statutory theft against attorneys may be adequately addressed by other available remedies. In *DeLaurentis* v. *New Haven*, 220 Conn. 225, 264, 597 A.2d 807 (1991), our Supreme Court stated: "While no civil remedies can guard against lies, the oath and the fear of being charged with perjury are adequate to warrant an absolute privilege for a witness' statements. . . . [C]ounsel who behave outrageously are subject to punishment for contempt of the court.

Parties and their counsel who abuse the process by bringing unfounded actions for personal motives are subject to civil liability for vexatious suit or abuse of process." (Footnote omitted.) In *Simms*, in determining whether the defendant attorneys were protected by the litigation privilege against a claim of fraud, the court further explained that "safeguards other than civil liability exist to deter or preclude attorney misconduct or to provide relief from that misconduct. A dissatisfied litigant may file a motion to open the judgment . . . or may seek relief by filing a grievance against the offending attorney under the Rules of Professional Conduct, which may result in sanctions such as disbarment. . . . Additionally, [j]udges of the Superior Court possess the inherent authority to regulate attorney conduct and to discipline members of the bar. . . . The range of sanctions available to the court include those set forth in Practice Book §§ 2-37[6] and 2-44,[7] and General Statutes § 51-84,[8] including fines, suspension and disbarment. Courts also may dismiss a case or impose lesser sanctions for perjury or contempt. . . . Accordingly, a formidable array of penalties, including referrals to the statewide grievance committee for investigation into alleged misconduct, is available to courts and dissatisfied litigants who seek redress in connection with an attorney's fraudulent conduct." (Citations omitted; footnotes in original; internal quotation marks omitted.) *Simms* v. *Seaman*, supra, 308 Conn. 552–54. Therefore, attorneys who engage in serious misconduct, such as the misconduct alleged by the plaintiff here, are subject to a number of possible sanctions, including disbarment. The availability of these remedies serves as a deterrent to attorney misconduct with respect to a claim of statutory theft as equally as it does with respect to a claim of fraud.

## II

The plaintiff also claims that, even if the litigation privilege applies to the defendant's conduct during the foreclosure proceeding, the trial court improperly granted the defendant's motion to dismiss and determined that the defendant was absolutely immune from liability for statutory theft where some of the defendant's alleged criminal conduct was perpetrated outside the scope of judicial proceedings. We disagree.

As stated previously, "[i]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . Because a challenge to the jurisdiction of the court presents a question of law, our review of the court's legal conclusion is plenary." (Internal quotation marks omitted.) *Romeo* v. *Bazow*, 195 Conn.

App. 378, 385, 225 A.3d 710 (2020).

In his brief, the plaintiff claims that "[s]ome of the injurious acts alleged in the complaint to have been committed by the defendant took place subsequent to and outside the confines of the judicial proceedings of the foreclosure action." Specifically, the plaintiff refer- ences the defendant's delayed recording of the certifi- cate of foreclosure six months after the litigation had ended and ten days after the property was sold by Benchmark to third parties. According to the plaintiff, by so doing, the defendant caused the tax bill for the property to be issued to the plaintiff, further concealed the fact that the plaintiff had lost the property in a foreclosure action, and violated the one month recording requirement of General Statutes § 49-16. The plaintiff further claims in his brief that "[t]he final act of the defendant's scheme occurred when Benchmark, acting by the defendant, sold the property on July 28, 2017 . . . for the sum of $22,000, nearly triple the amount that the defendant had represented to the court just six months earlier was the fair market value of the property." Thus, the actions alleged by the plaintiff to have taken place outside of the scope of the judicial proceedings were the defendant's recording of the cer- tificate of foreclosure on the land records and the subse- quent sale of the property.

It is well settled that "communications uttered or published in the course of judicial proceedings are [pro- tected by the litigation privilege] so long as they are in some way pertinent to the subject of the controversy. . . . [W]e must first determine whether the proceed- ings [in question] were [judicial or] [quasi-judicial] in nature. The judicial proceeding to which [absolute] immunity attaches has not been [exactly] defined . . . . It includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not. It includes for example, lunacy, bankruptcy, or naturalization proceedings, and an election contest. It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or quasi-judicial, in character. . . .

"[Once we have] concluded that the statements of the defendant were made in the context of a judicial or quasi-judicial process, we must next determine whether the alleged defamatory statements were made in the course of that proceeding and whether they related to its subject matter. . . . In making [the] determination [of whether a particular statement is made in the course of a judicial proceeding], the court must decide as a matter of law whether the . . . statements [at issue] are sufficiently relevant to the issues involved in a pro- posed or ongoing judicial [or quasi-judicial] processing, so as to qualify for the privilege. The test for relevancy

is generous . . . ." (Citations omitted; internal quotation marks omitted.) *Kruger* v. *Grauer*, 173 Conn. App. 539, 547–48, 164 A.3d 764, cert. denied, 327 Conn. 901, 169 A.3d 795 (2017).

"[L]ike the privilege which is generally applied to pertinent statements made in formal judicial proceedings, an absolute privilege also attaches to relevant statements made during administrative proceedings which are quasi-judicial in nature. . . . Once it is determined that a proceeding is [quasi-judicial] in nature, the absolute privilege that is granted to statements made in furtherance of it extends to every step of the proceeding until final disposition." (Internal quotation marks omitted.) *Craig* v. *Stafford Construction, Inc.*, 271 Conn. 78, 84, 856 A.2d 372 (2004); *Kelley* v. *Bonney*, 221 Conn. 549, 565-66, 606 A.2d 693 (1992) (same); *Petyan* v. *Ellis*, supra, 200 Conn. 246 ("[t]his privilege extends to every step of the proceeding until final disposition"); see also *Hopkins* v. *O'Connor*, 282 Conn. 821, 839, 925 A.2d 1030 (2007) (in making determination of whether statement was made in course of judicial proceeding, court must decide as matter of law whether allegedly defamatory statements are sufficiently relevant to issues involved, test for relevancy is generous and "judicial proceeding has been defined liberally to encompass much more than civil litigation or criminal trials" (internal quotation marks omitted)); *Cohen* v. *King*, 189 Conn. App. 85, 89, 206 A.3d 188 (2019) (same).

Our Supreme Court has further explained that "[t]he scope of privileged communication extends not merely to those made directly to a tribunal, but also to those preparatory communications that may be directed to the goal of the proceeding. . . . To make such preparations . . . effective, there must be an open channel of communication between the persons interested and the forum, unchilled by the thought of subsequent judicial action against such participants; provided always, of course, that such preliminary meetings, conduct and activities are directed toward the achievement of the objects of the litigation or other proceedings." (Internal quotation marks omitted.) *Hopkins* v. *O'Connor*, supra, 282 Conn. 832. That court has "consistently . . . held that a statement is absolutely privileged if it is made in the course of a judicial proceeding and relates to the subject matter of that proceeding. E.g., [id.], 830–31; *DeLaurentis* v. *New Haven*, supra, 220 Conn. 264; *Petyan* v. *Ellis*, supra, 200 Conn. 245–46." *Gallo* v. *Barile*, 284 Conn. 459, 470, 935 A.2d 103 (2007). The litigation privilege "applies to statements made in pleadings or other documents prepared in connection with a court proceeding." *Petyan* v. *Ellis*, supra, 251–52.

There is no dispute in the present case that the foreclosure proceeding that forms the basis for the allegations of the complaint is a judicial proceeding to which the litigation privilege may apply. In light of the fact that

the litigation privilege applies to documents prepared in connection with a judicial proceeding; see id.; and that the privilege extends to every step of the proceeding until its final disposition; see *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 84; we are not persuaded by the plaintiff's attempts to characterize certain of the defendant's actions as being outside the scope of the privilege. With respect to the defendant's recording of the certificate of foreclosure on the land records, which was done by the defendant in his capacity as Benchmark's attorney in the foreclosure proceeding, pursuant to the requirements of § 49-16,[9] that action was clearly conducted in connection with, and was related and relevant to, the foreclosure proceeding. As such, it falls within the scope of the litigation privilege.

We equally reject the plaintiff's claim that the subsequent sale of the foreclosed property concerned conduct by the defendant that was outside the scope of the privilege. First, the complaint does not contain any allegations of wrongdoing by the defendant with respect to the sale of the property; instead, the plaintiff alleges that the defendant's allegedly wrongful conduct up to and including his delayed filing of the certificate of foreclosure eventually resulted in the sale of the property by *Benchmark*. Paragraph 31 of the complaint alleges that "[p]ursuant to a quitclaim deed dated July 28, 2017 . . . Benchmark sold the property" to certain individuals as joint tenants. Paragraph 32 further states that, "[a]s a result of the conduct of [the defendant] alleged above, [the plaintiff] was unaware . . . that the tax lien foreclosure action had even commenced, let alone that it had gone to judgment, that the law days had run, that Benchmark has taken title to the property by strict foreclosure and that *Benchmark* had sold the property to third parties for a windfall profit . . . ." (Emphasis added.) We must decide this case on the basis of the allegations of the complaint, which simply do not allege that the defendant was involved in wrongdoing with respect to the actual sale of the property after title had vested in Benchmark, or even that the sale was procured through the services of the defendant. Accordingly, the plaintiff's claim lacks merit.

Second, even if we were to construe the allegations of the complaint as alleging a claim for statutory theft on the basis of the defendant's conduct concerning the sale of the foreclosed property, the plaintiff's claim that such conduct falls outside the scope of the privilege, nevertheless, still fails. The test for whether the defendant's conduct was protected by absolute immunity depends on the relationship and relevancy of that conduct to the foreclosure proceeding. As our Supreme Court has noted, "[t]he test for relevancy is generous, and judicial proceeding has been defined liberally to encompass much more than civil litigation or criminal trials." (Internal quotation marks omitted.) *Hopkins* v. *O'Connor*, supra, 282 Conn. 839. We conclude that the

subsequent sale of the foreclosed property was an integral step in the foreclosure process, and the defendant's alleged conduct in assisting Benchmark with that sale was relevant to that proceeding. See id., 832 (privilege extends to "communications that may be directed to the goal of the proceeding" and to "such preliminary meetings, conduct and activities [that] are directed toward the achievement of the objects of the litigation or other proceedings" (internal quotation marks omitted)). For these reasons, we reject the plaintiff's claim.

## III

On the basis of our examination of the public policies and competing interests at stake, and after applying the public policy analysis under absolute immunity to the plaintiff's claim of statutory theft, we conclude that absolute immunity bars the plaintiff's claim of statutory theft against the defendant.

In summary, statutory theft is clearly distinguishable from claims of vexatious litigation and abuse of process, to which the litigation privilege does not apply, as the plaintiff's claim of statutory theft against the defendant attorney for conduct that occurred during a judicial proceeding does not challenge the underlying purpose of the litigation but, rather, concerns the defendant's role as an advocate for his client. Similar to a claim of fraud, a claim of statutory theft does not contain inherent safeguards against inappropriate retaliatory litigation, as with claims of vexatious litigation and abuse of process; see *Simms* v. *Seaman*, supra, 308 Conn. 549 ("the required elements of fraud, like the required elements of defamation and interference with contractual or beneficial relations . . . do not provide the same level of protection against the chilling effects of a potential lawsuit as the required elements of vexatious litigation"); and a claim of statutory theft does not contain the same type of stringent elements found in the claim of vexatious litigation, which provide adequate protection against unwarranted litigation. Instead, applying the balancing test set forth in *Simms*, we conclude that statutory theft is more akin to claims of fraud and defamation, to which the litigation privilege applies, and, thus, the underlying purpose of absolute immunity applies equally to statutory theft as it does to claims of defamation or fraud. Our determination that the litigation privilege protects the defendant from the plaintiff's claim of statutory theft also furthers the public policy underlying absolute immunity of encouraging participation and candor in judicial proceedings, while at the same time limiting the exposure of attorneys to harassing and expensive litigation, which would likely inhibit their freedom in making good faith evidentiary decisions and representations, and have a negative effect on their ability to advocate zealously for their clients. See id., 550–51. We also note that an array of alternatives to civil liability exists to deter an attorney

from engaging in misconduct or to provide relief to a dissatisfied litigant in connection with an attorney's alleged misconduct. Finally, we reject the plaintiff's attempts to characterize certain of the defendant's actions as being outside the scope of the privilege. The defendant's recording of the certificate of foreclosure on the land records, as well as the defendant's alleged conduct in assisting Benchmark with the subsequent sale of the foreclosed property, were related and relevant to the foreclosure proceeding and, thus, fall within the scope of the litigation privilege. Accordingly, the court properly granted the defendant's motion to dismiss and concluded that the plaintiff's claim of statutory theft against the defendant for his conduct during the foreclosure proceeding was barred by absolute immunity.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The parties use the terms civil theft, statutory civil theft and statutory theft to refer to the plaintiff's cause of action under General Statutes § 52-564. For consistency, we refer to the plaintiff's cause of action in this opinion as a claim for statutory theft.

[2] Although there is no appellate authority on this issue, a number of Superior Court cases have concluded that absolute immunity is a bar to a claim against an attorney for statutory theft. See *Vossbrinck* v. *Cheverko*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-17-5016825-S (February 20, 2018) (attorney who had represented party in foreclosure action was protected by absolute immunity from claim of statutory theft premised on attorney's conduct in ordering removal of plaintiff's personal property from foreclosed property following order of ejectment by court; court found that intentional tort of statutory theft was similar to other intentional torts that are barred by absolute immunity); *Gordon* v. *Eckert Seamans Cherin & Mellott, LLC*, Superior Court, judicial district of New Haven, Docket No. CV-17-5038333-S (February 6, 2018) (65 Conn. L. Rptr. 893, 899–901) (absolute immunity barred cause of action for statutory theft against defendant law firm, which represented foreclosing mortgagee in foreclosure action, where personal property stored on foreclosed property was removed by defendant in pursuit of lawful execution of ejectment and possession following lawful foreclosure); *Stradinger* v. *Griffin Hospital*, Superior Court, judicial district of Waterbury, Docket No. CV-15-6026406-S (December 11, 2015) (court applied public policy analysis underlying absolute immunity to cause of action for statutory theft and determined that, on balance, protection of immunity should extend to such actions).

[3] The court in *Simms* also considered, as a fourth factor, whether fraudulent conduct by an attorney has been protected by the litigation privilege in federal courts. See *Simms* v. *Seaman*, supra, 308 Conn. 545-46. We have not discovered any federal precedent on the issue presented in the present case and, therefore, we do not include an analysis of this factor.

[4] Notably, the plaintiff's allegations of statutory theft make clear that the effect of the defendant's claimed misconduct resulted in title vesting in Benchmark, rather than any direct benefit accruing to the defendant himself.

[5] As our Supreme Court has recognized, to establish a claim for fraud, "a plaintiff must be able to show by clear and convincing evidence that: (1) a false representation was made [by the defendant] as a statement of fact; (2) the statement was untrue and known to be so by [the defendant]; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. . . . *Nazami* v. *Patrons Mutual Ins. Co.*, 280 Conn. 619, 628, 910 A.2d 209 (2006); see *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 819, 955 A.2d 15 (2008) (standard of proof for claim of common-law fraud is clear and convincing evidence)." (Internal quotation marks omitted.) *Stuart* v. *Freiberg*, 316 Conn. 809, 821, 116 A.3d 1195 (2015). "In contrast to a negligent misrepresentation, [a] fraudulent representation . . . is one that is knowingly untrue, or made without belief in its truth, or recklessly made and for the purpose of inducing action upon it." (Internal quotation

marks omitted.) *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 142, 2 A.3d 859 (2010).

In the present case, the allegations in support of the claim of statutory theft are as follows: (1) the defendant made a number of misrepresentations in the foreclosure action; (2) the representations were materially false and known by the defendant to be false at the time they were made; (3) the false representations were made with the intent to induce and cause the court in the foreclosure action to rely on them; and (4) the court did so rely on those misrepresentations in defaulting the plaintiff in the foreclosure action and rendering the judgment of strict foreclosure, which ultimately deprived the plaintiff of the opportunity to protect his ownership interest in the property and thereby caused him financial loss. Accordingly, even though the allegations of the complaint are strikingly similar to a claim of fraud, the plaintiff's claim satisfies only the first two elements of common-law fraud, as the six allegedly false representations set forth in the complaint were made by the defendant to the court, not to the plaintiff, and were intended to induce reliance thereon by the court in defaulting the plaintiff and rendering the judgment of strict foreclosure. We are mindful of this distinction and conclude only that in comparing a claim of statutory theft to other claims to determine whether it is one for which the litigation privilege applies, it is more akin to a claim of fraud, which is protected by absolute immunity, rather than a claim of vexatious litigation or abuse of process, to which such immunity does not apply.

[6] "Practice Book § 2-37 provides in relevant part: (a) A reviewing committee or the statewide grievance committee may impose one or more of the following sanctions and conditions in accordance with the provisions of Sections 2-35 and 2-36:

"(1) reprimand;

"(2) restitution;

"(3) assessment of costs;

"(4) an order that the respondent return a client's file to the client;

"(5) a requirement that the respondent attend continuing legal education courses, at his or her own expense, regarding one or more areas of substantive law or law office management;

"(6) an order to submit to fee arbitration;

"(7) in any grievance complaint where there has been a finding of a violation of Rule 1.15 of the Rules of Professional Conduct or Practice Book Section 2-27, an order to submit to periodic audits and supervision of the attorney's trust accounts . . . .

"(8) with the respondent's consent, a requirement that the respondent undertake treatment, at his or her own expense, for medical, psychological or psychiatric conditions or for problems of alcohol or substance abuse. . . .

\* \* \*

"(c) Failure of the respondent to comply with any sanction or condition imposed by the statewide grievance committee or a reviewing committee may be grounds for presentment before the superior court." (Internal quotation marks omitted.) *Simms* v. *Seaman*, supra, 308 Conn. 553–54 n.17.

[7] "Practice Book § 2-44 provides in relevant part: 'The [S]uperior [C]ourt may, for just cause, suspend or disbar attorneys . . . .' " *Simms* v. *Seaman*, supra, 308 Conn. 554 n.18.

[8] "General Statutes § 51-84 provides: '(a) Attorneys admitted by the Superior Court shall be attorneys of all courts and shall be subject to the rules and orders of the courts before which they act.

" '(b) Any such court may fine an attorney for transgressing its rules and orders an amount not exceeding one hundred dollars for any offense, and may suspend or displace an attorney for just cause.' " *Simms* v. *Seaman*, supra, 308 Conn. 554 n.19.

[9] General Statutes § 49-16 provides in relevant part: "When any mortgage of real estate has been foreclosed, and the time limited for redemption has passed, and the title to the mortgaged premises has become absolute in the mortgagee, or any person claiming under him, he shall, either in person or by his agent or attorney, forthwith make and sign a certificate describing the premises foreclosed, the deed of mortgage on which the foreclosure was had, the book and page where the same was recorded and the time when the mortgage title became absolute. The certificate shall be recorded in the land records of the town where the premises are situated . . . ."